## MITCHELL v. DOUGHERTY.

### (Circuit Court of Appeals, Third Circuit. December 6, 1898.)

### No. 18.

1. BUILDING CONTRACTS—PROVISION REQUIRING DECISION OF ARCHITECT.

A provision in a building contract requiring the submission of all questions thereunder to the architects, if valid, does not preclude a suit by one of the parties where it is shown that the architects refused to act when they should have done so.

2. SAME—LEGALITY—OUSTING JURISDICTION OF COURTS.

It is not competent for parties to a building contract to stipulate that any dispute arising between them, including questions not only as to the value or character of the work done, but also as to their legal rights under the contract, shall be submitted to the architects, whose decision shall be final; and such a stipulation will not oust the jurisdiction of the courts.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

R. C. Dale, for plaintiff in error.

J. Washington Logue and Pierce Archer, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

DALLAS, Circuit Judge. This case is before us on writ of error to the judgment of the circuit court for the Eastern district of Pennsylvania in an action by Frank A. Mitchell, plaintiff in error, against William R. Dougherty, defendant in error. Dougherty on May 15, 1896, had contracted with Archbishop Ryan for the erection of a certain building; and on May 22, 1896, the plaintiff, Mitchell, agreed with the defendant, Dougherty, to do a certain portion of the work, and furnish the materials therefor. Both contracts were in writing. The one between Archbishop Ryan and William R. Dougherty provided as follows:

"It is mutually agreed between the parties to this agreement that if any alterations, additions, or omissions are made in the work during its progress, the value of the same shall be decided by the engineers and architects, who shall make an equitable allowance therefor, and shall add the amount of said allowance to the contract price if the cost of the work has been increased, or shall deduct the amount from the contract price if the cost of the work has been lessened, as they, the said engineers and architects, may deem just and equitable. And it is mutually agreed and distinctly understood that the decision of the engineers and architects shall be final and conclusive in any dispute which may arise between the parties to this agreement relative to or touching the same; and each and every of said parties do hereby waive any right of action, suit or suits, or other remedy, in law or otherwise, by virtue of said covenants, so that the decision of the said engineers and architects shall, in the nature of an award, be final and conclusive on the rights and claims of said parties."

The contract between the plaintiff and the defendant recited and provided as follows:

"Whereas, the said Dougherty has entered into articles of agreement with his Grace, Most Reverend P. J. Ryan, bearing date the fifteenth day of May, 1896, for the erection of certain brick buildings at Fatland, Pa., known as the 'R. C. Protectory,' according to certain plans and specifications therein re-

ferred to, which said articles of agreement, plans, and specifications are to be considered as if hereto attached, and made as much a part of this contract as if specially recited herein, all information concerning same being known to the said Frank A. Mitchell; and whereas, the said Frank A. Mitchell has agreed to subcontract with the said Dougherty for a certain portion of the work and materials necessary to be supplied by him in the erection and completion of the said building; and whereas, it has been agreed that, as to so much hereof as has been thus subcontracted for, the said Frank A. Mitchell, for the consideration hereinafter named, is, as between himself and the said Dougherty, to stand in the place of the latter, and to do everything in, about, and concerning the same as is provided in said Dougherty's contract with said Archbishop P. J. Ryan, subject to all its terms and restrictions, so that the said Dougherty shall be indemnified and saved harmless from all loss, costs, and charges in and about said portion of work and materials: Now, this agreement witnesseth that the said parties do hereby, in consideration of the premises, and of the mutual covenants herein contained, covenant, promise, and agree to and with each other, each binding himself, his heirs, executors, and administrators and assigns, to the other, his heirs, executors, administrators, or assigns, as follows: (1) The said Frank A. Mitchell further agrees to furnish all the labor and material necessary to complete all the roof work, galvanized iron, copper, tile, and tin, etc., in strict accordance with plan and specifications prepared and shown by Wilson Bros. & Co., and to their entire satisfaction. * * * The said Archbishop P. J. Ryan having the right to add to, change, or modify any part of the plans of aforesaid building during its progress, the said Frank A. Mitchell will do what shall thus in the above-specified matters be entailed upon the said Dougherty; and any such modifications shall not affect this contract, in regard to the considerations, the time for completion, or other matter, unless a specified agreement making provision for the same shall be reduced to writing, and signed by the parties hereto."

The plaintiff entered upon the work which he had undertaken to perform, but after he had been engaged in it for about six weeks he was required by the defendant to proceed no further until the owner should decide whether a sort of tile different from that named in the contract would not be used. The plaintiff was also requested to present an estimate of the cost of making the contemplated substitution, and in January, 1897, he did present such an estimate. The matter was then held under consideration until March 31, 1897, when the defendant addressed to the plaintiff a letter as follows:

"Philadelphia, March 31, 1897.
"Mr. Frank A. Mitchell, 104 West Fifth Street, Wilmington, Del.—Dear Sir: The architects have declined to consider at this time the question of what allowance is to be made for the placing of the Celadon tile, instead of the Ludowici, upon the Protectory buildings at Fatland. As matters present themselves to me to-day, I find the condition to be that the change will have to be made immediately, and the work prosecuted. While I have received from them no direct statement that they will not pass upon the claim, they have intimated that the future will be the proper time for them to consider it, and are now engaged in getting estimates from other people for the purpose of having some one else do the work. It is necessary, therefore, that the work of laying the Celadon tile should be commenced at once. The Celadon people,—having knowledge for some time back, from Wilson Bros., that their tile was to be used,—I believe, are in shape to make an immediate shipment. I have therefore ordered to-night that some tile be shipped, so as to prevent Wilson Bros., if possible, from taking the work out of our hands. The position in the matter is just this: That what, if anything, is to be allowed for the change, is to be fixed by the architects in the future. What I get, you are to receive; and, in presenting your claim to them, I let be distinctly known that, while adopting it as my claim, I did so as it was the amount you stated it would take to make the change. I have ordered from the Celadon people, feeling that in this matter I am protecting your in-

terests as well as my own, because, as you know, your contract places you in your dealings with me in the position that I occupy with the owner.

"Yours, truly, William R. Dougherty."

Plaintiff declined to proceed in accordance with the proposed substitution, without an agreement making provision for the same, and in this he was clearly justified by the express terms of his contract. The court below appears to have so understood the matter at the time of the trial, for the learned judge charged that:

"If the plaintiff was prevented going on to complete the work by being required to substitute a different description of tile, and the owner of the property declining to agree upon the cost of this substitution, then the plaintiff was justified in discontinuing the work, and was not required to proceed until the cost had been agreed upon, and the agreement reduced to writing, because, if he had thus proceeded, he would have been precluded by the strict terms of his contract from recovering anything on that account. * * * It seems an entirely plain and unavoidable deduction from the evidence that the plaintiff was requested to discontinue the work temporarily while the subject of introducing a different tile was under consideration; that the different tile was afterwards substituted by the builder for the one named in the contract, and that the plaintiff was entitled to make a proposal of the cost of this change; that he complied with it; that the only answer, so far as the court remembers, that he received to this proposal was that the architects, to whom the subject had been referred, were not willing to pass upon that question then, but that the work should go on, and it would be determined in the future. Now, the court says to you that, if that is the fact, it was a justification to the plaintiff for discontinuing the work. Then, when the work was subsequently put in the hands of another for completion, he had no further concern with it. You will say, however, how that question of fact should be decided."

Thus, it appears that it was left to the jury, with proper instructions concerning the requirements of the contract, to say whether the plaintiff had not done all that it was incumbent upon him to do to obtain the decision of the architects; and the jury having found, as must now be assumed, that his failure to secure such a decision resulted wholly from the refusal of the architects to act when they should have acted, we think, aside and apart from the question presently to be considered, that the plaintiff ought not to have been turned out of court merely because a decision by the architects had not been procured.

The court below, notwithstanding the verdict, entered judgment in favor of the defendant upon a point which had been reserved upon the trial, as follows:

"That the plaintiff is bound by the provisions of the contract entered into between Dougherty and the owners, waiving suits at law in reference to any dispute arising out of the contract, and he is only entitled to recover upon an award made by the architects. There being no evidence that such an award has been made, or any reference by plaintiff to architects, the verdict must be for the defendant."

The learned judge, in sustaining this point, held that the entire controversy which arose from the dismissal of the plaintiff, including, of course, the dispute as to whether that dismissal was wrongful, was for arbitration by the architects under the reference clause of the contract, the validity of which he upheld; and the important question in the cause, therefore, is, does this ruling comport with the law? It is to be observed that this was an action, not to recover for work done under the contract, but for damages for the defendant's breach in pre-

venting the plaintiff from proceeding under it.   We have no doubt that the terms of the clause under consideration are quite broad enough to include this demand, but we cannot agree that it is competent for the parties to any contract, by any stipulation which they may make a part of it, to oust the jurisdiction of the courts, and substitute for them an extra-legal tribunal of their own creation, with power to finally and conclusively decide such a matter.   It is not necessary to question, and we do not question, the right of the parties to such a contract as this to set aside the rules of evidence established by law, by providing that the estimate, computation, or appraisement of any one whom they may see proper to select shall be exclusively received to prove the extent or character of work done, and the sum to be paid therefor; but where, as here, they undertake to waive all right of action respecting "any dispute" which may arise, they go much further, and seek to accomplish what the law forbids,—the complete abrogation of the authority which it has conferred upon the courts.

The cases cited by the court below, with the exception of one in a circuit court of the United States, to which we will refer further on, are all Pennsylvania cases; and it must be conceded that they lend some support to its conclusion, although it would, we think, be difficult to deduce from the decisions in that state any distinctly established rule upon the subject.   Mentz v. Insurance Co., 79 Pa. St. 478, does not appear to have been called to the attention of the learned judge, and that case, at least, appears to be in harmony with our understanding of the law. There the action was brought to recover for loss from fire under a policy of insurance which contained a condition as follows:

"(8) In case any difference or dispute shall arise between the assured and this company touching the amount of any loss or damage sustained by him, such difference shall be submitted to the judgment of arbitrators, one to be appointed by each party, with power to select a third in case of disagreement, whose decision thereupon shall be final and conclusive; and no action, suit, or proceedings at law or in equity shall be maintained on this policy, unless the amount of loss or damage, in case of difference or dispute, shall be first thus ascertained."

The trial judge entered a judgment of nonsuit, upon the ground that the above condition required the assured to submit to a reference; and this judgment was reversed in an opinion by Mr. Justice Sharswood, from which we extract the following:

"There can be no doubt that, if this case stood upon a general arbitration clause in the policy alone, it would fall within the principle settled by this court, conformably to all the previous English authorities, in Gray v. Wilson, 4 Watts, 41, Snodgrass v. Gavit, 28 Pa. St. 224, and Lauman v. Young, 31 Pa. St. 310,—that it is not in the power of the parties to a contract to oust the courts of their jurisdiction.   The cases in which the certificate or approbation of any particular person—as the engineer of a railroad company—to the amount of a claim is made a condition precedent to an action rest upon entirely different principles.   He is not created a judge or arbitrator of law and facts, but simply an appraiser of work done.   Navigation Co. v. Fenlon, 4 Watts & S. 205; Lauman v. Young, 31 Pa. St. 306. * * * It is not in the power of parties thus to oust the courts of their general jurisdiction, any more than they have to add to a personal covenant, that they are not to be responsible for a breach of it.   Furnivall v. Coombes, 5 Man. & G. 736.   The supreme court of the United States have recognized the soundness of this general principle in Insurance Co. v. Morse, 20 Wall. 445, in which they held that an agreement by a foreign insurance company, in conformity with a state statute,

that, if sued in a state court, they would not remove the suit into the federal court, was invalid. The contention, however, here, is that the special provision added in this policy to the arbitration clause distinguishes this case from those cited. It declares that 'no action, suit, or proceedings at law or in equity shall be maintained on this policy, unless the amount of loss or dispute as aforesaid shall have been first thus ascertained.' If, however, it was not in the power of the parties to oust the courts of their general jurisdiction by such an agreement, that clause does not help them. Had a general arbitration clause been valid, it would have been a condition precedent to an action, of itself. The provision in question is but the expression of that which was implied. We are not to be understood as holding that this provision of the policy, which is special, not general, is entirely without effect. By its terms it was confined to any difference or dispute that should arise between the insured and the company touching the amount of any loss or damage. But then it was incumbent on the defendants below, in order to avail themselves of it, to show that a dispute had arisen touching the amount of the loss. In other words, they must show that they admitted the validity of the policy, and their liability under it, and that the only question was as to the extent of the loss."

The case of Fox v. Hempfield, 14 Leg. Int. 148, Fed. Cas. No. 5,010, is the circuit court case we have mentioned as having been referred to by the court below. It certainly does maintain the position taken by that court, but, notwithstanding the fact that it was decided by a judge of the highest eminence, we are constrained to dissent from it. But two cases were cited in his opinion. One of these is the Pennsylvania case of Navigation Co. v. Fenlon, 4 Watts & S. 205; and the remarks of the court in Fox v. Hempfield respecting the usefulness of a stipulation for arbitrament of disputes was evidently suggested by some of the language of the opinion in that case. It was there said:

"Experience, which is the best test, has shown its beneficial effects, and, indeed, its absolute necessity; for, without it, it is next to a certainty the company would be constantly harassed by vexatious and ruinous litigation. In any contract of this kind, to avoid unpleasant and unprofitable controversies, it has been found expedient at least to clothe the engineer with great power in relation to the conduct of the contractors and the manner of performing work. * * * An engineer employed by the company is perfectly acquainted with all the details of the work," etc.

Now, although there is much in that opinion to give color to the supposition that the learned judge by whom it was delivered intended to maintain the validity of a provision for general reference, yet, upon careful consideration of it as a whole, and from the part above quoted, we think it apparent that the question which the court really had in mind, and to which its reasoning should be related, was that which is stated upon page 210 of the report, thus:

"The question then recurs, by whom is the compensation of the plaintiffs to be estimated?"

As applied to that question, the opinion might well be accepted; but we think that in Fox v. Hempfield the mistake was made of applying it to a provision, the effect of which was to absolutely oust the jurisdiction of the courts, and not merely to prescribe by whom compensation should be estimated. The other case referred to in Fox v. Hempfield is that of Scott v. Avery, 5 H. L. Cas. 827, but the learned judge must have been in some manner misled as to the ground upon which the judgment in that case was rested. As was said in Mentz v. Insurance Co., supra:

'"The majority of the opinions there went upon the ground that it was a special, not a general, arbitration which was intended. The power to oust the courts of their general jurisdiction was certainly repudiated."

Moreover, although the decision in Fox v. Hempfield was made in 1857, we do not find that it has been referred to in any of the later deliverances of the courts of the United States. It cannot be reconciled with them.

Trott v. Insurance Co., 7 Cliff. 439, 24 Fed. Cas. 215, was a suit upon a policy of insurance, in which Mr. Justice Clifford, at circuit, overruled a plea which set up that "it was the duty of the plaintiff, mutually with the defendants, to have agreed upon and chosen referees to determine upon the difference and dispute," as was provided for by the by-laws. In the opinion of the court it was said:

"Nothing, therefore, can be more certain than that the effect of the by-law, if it be valid, is to oust the jurisdiction of the courts. Every difference or dispute must be referred to and determined by referees, and the policy expressly provides that their award in writing shall be conclusive and binding on all the parties. To say that a suit may afterwards be brought upon the award is not a satisfactory answer to this objection. Having come to this conclusion, the only remaining inquiry is whether the by-law is valid, and I am of the opinion that it is not. Judge Story, in the case of Tobey v. Bristol Co., Fed. Cas. No. 14,065, divided the cases upon this subject into two classes: One where an agreement to refer to arbitration was set up as a defense to a suit either at law or in equity; and the other, where the party, as plaintiff, sought to enforce such an agreement by a bill in equity for a specific performance. Both classes, says the learned judge, have shared the same fate. Courts of justice have refused to allow the former as a bar or defense against the suit, and have declined to enforce the latter, as ill founded in point of jurisdiction. * * * Text writers, both English and American, have long regarded it as a settled principle of law that the parties to a contract cannot oust the jurisdiction of the courts by any agreement to submit the matters in difference to arbitration. 2 Arn. Ins. 1245; 2 Story, Eq. Jur. § 1457; 2 Pars. Mar. Law, 483. Many additional decisions and authorities might be added to this list, where the same unqualified doctrine is laid down and enforced, and I am not aware that the soundness of the rule established in the leading case has ever been questioned by an American court. * * * All things considered, I am of the opinion that the rule is stated by Coleridge, J., in Avery v. Scott, 8 Exch. 497, overruling Scott v. Avery, Id. 487, in the same volume. He says there is no dispute as to the principle. Both sides admit that it is not unlawful for parties to agree to impose a condition precedent with respect to the mode of settling the amount of damage, or the time for payment, or any matters of that kind which do not go to the root of the action. On the other hand, it is conceded that any agreement which is to prevent the suffering party from coming into a court of law, or, in other words, which ousts the courts of their jurisdiction, cannot be supported. That qualification to the general doctrine as stated in the earlier cases was admitted in Hill v. More, 40 Me. 515, and I am inclined to think it is one that ought to be sustained. But the present case is not within that qualification, and consequently the demurrer is sustained, and the plea adjudged bad."

In Insurance Co. v. Morse, 20 Wall. 451, the court cited a number of authorities to show that "agreements in advance to oust the courts of the jurisdiction conferred by law are illegal and void," and especially referred to Scott v. Avery, 5 H. L. Cas. 811; Story, Eq. Jur. § 670; and Stephenson v. Insurance Co., 54 Me. 55, as follows:

"In Scott v. Avery [one of the cases] the lord chancellor says: 'There is no doubt of the general principle that parties cannot by contract oust the ordinary courts of their jurisdiction. That has been decided in many cases.' * * * And the principle, Mr. Justice Story, in his Commentaries on Equity Juris-

prudence, says, is applicable in courts of equity as well as in courts of law. 'And where the stipulation, though not against the policy of the law, yet is an effort to devest the ordinary jurisdiction of the common tribunals of justice, such as an agreement in case of dispute to refer the same to arbitration,' a court of equity will not, any more than a court of law, interfere to enforce the agreement, but it will leave the parties to their own good pleasure in regard to such agreements. The regular administration of justice might be greatly impeded or interfered with by such stipulations, if they were specifically enforced.' In Stephenson v. Insurance Co., 54 Me. 55, the court say: 'While parties may impose, as condition precedent to applications to the courts, that they shall first have settled the amount to be recovered by an agreed mode, they cannot entirely close the access to the courts of law. The law, and not the contract, prescribes the remedy; and parties have no more right to enter into stipulations against a resort to the courts for their remedy in a given case, than they have to provide a remedy prohibited by law. Such stipulations are repugnant to the rest of the contract, and assume to devest courts of their established jurisdictions. As conditions precedent to an appeal to the courts, they are void.' "

In Guarantee Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 11 Sup. Ct. 512, where a decree of a circuit court dismissing a bill for foreclosure of a corporation mortgage was reversed, the supreme court said:

"It is true, there is a subsequent provision in the deed of trust to the effect that neither the whole nor any part of the premises mortgaged shall be sold, under proceedings either at law or equity, for the recovery of the principal or interest of the bonds; it being the intention and agreement of the parties that the mode of sale provided by the mortgage 'shall be exclusive of all others.' This clause, however, is open to the objection of attempting to provide against a remedy in the ordinary course of judicial proceedings, and oust the jurisdiction of the courts, which, as is settled by the uniform current of authority, cannot be done. Hope v. Society, 4 Ch. Div. 327; Edwards v. Society, 1 Q. B. Div. 563; Horton v. Sayer, 4 Hurl. & N. 643; Scott v. Avery, 8 Exch. 487, 5 H. L. Cas. 811; Thompson v. Charnock, 8 Term R. 139; Mitchell v. Harris, 2 Ves. Jr. 129; Tobey v. Bristol Co., 3 Story, 800, Fed. Cas. No. 14,065; Noyes v. Marsh, 123 Mass. 286; King v. Howard, 27 Mo. 21; Conner v. Drake, 1 Ohio St. 166; Trott v. Insurance Co., 1 Cliff. 439, Fed. Cas. No. 14,189; 2 Story, Eq. Jur. 1457."

See, also, Tobey v. Bristol Co., 3 Story, 800, 23 Fed. Cas. 1313, and The Excelsior, 123 U. S. 40–51, 8 Sup. Ct. 33.

We have not felt called upon to discuss in detail the several Pennsylvania cases which have been urged upon our attention by the learned counsel for the defendant in error. The question before us is not as to the enforcement of the contract in accordance with the law of the place where it was made, but is as to whether a court of the United States should, because of the parties' agreement in advance to abstain from invoking its jurisdiction, refuse to enforce the contract at all. Upon this question the decisions of the supreme court of the United States are controlling, and they admit of but one conclusion. The judgment of the circuit court is reversed, and the cause will be remanded to that court, with direction to enter judgment for the plaintiff on the verdict.