Let there be a judgment for the United States.

---

### UNITED STATES v. COLE.

#### (Circuit Court, N. D. California. March 15, 1904.)

#### No. 13,399.

1. CASHIER OF MINT—LIABILITY FOR THEFT BY CHIEF CLERK—OFFICERS.

The cashier of a mint, appointed under Rev. St. § 3504 [U. S. Comp. St. 1901, p. 2340], providing that the superintendent of the mint shall appoint assistants and clerks, is not an officer of the mint, within section 3506 [page 2341], providing that the superintendent of each mint shall be the keeper of all bullion or coin in the mint, except while the same is legally in the hands of other "officers"; Const. art. 2, § 2, providing that the president shall nominate, and, by and with the advice and consent of the Senate, shall appoint, all officers of the United States "whose appointments are not herein otherwise provided for," but Congress may vest the ap-

pointment of inferior officers in the President alone, in courts, or in the heads of departments; so that, where the combination of the lock of the vault of the mint was in the possession of the superintendent, the chief clerk, and the cashier of the mint, the cashier was not liable for the theft of money therefrom by the chief clerk.

## Demurrer to Answer, and Motion to Strike Out Parts of Answer.

M. B. Woodworth, U. S. Atty.
Frederic W. Hall, for defendant.

MORROW, Circuit Judge (orally). This is an action against the defendant, Cole, personally, to recover the sum of $30,000. The allegations of the complaint charge that Cole, in his official capacity as cashier of the United States mint, lawfully received into his possession all the moneys in the mint, amounting to $47,940,930, and was charged by law with the custody and safe-keeping of the same, and the accounting for and the paying over of the same to the United States, and that he has failed to account for and pay over $30,000 of the amount received by him. The United States prays for judgment against him in the sum of $30,000 on account of his failure to so account and pay over.

To this complaint the defendant, Cole, filed a demurrer on the ground that it was not his legal duty, as cashier of the mint, to receive possession of, or to have the custody of, or to safely keep, or to account for, or to pay over to the United States, the moneys of the United States mint; and it was argued in support of this demurrer that the complaint undertook to hold the defendant responsible as an insurer of the moneys that came into his possession. It was, however, claimed on behalf of the plaintiff that the complaint did not attempt to hold Cole as an insurer, but only to an ordinary accounting as a mere bailee for hire. The demurrer was accordingly overruled.

The defendant thereupon filed his answer, in which he denies generally and specifically the allegations of the complaint, and for a further defense to the action he sets forth what he alleges to be the facts connected with the loss of the money for which the action seeks to make him responsible. He alleges that the said $47,940,930 received into the mint was received and receipted for, and came into the possession of the superintendent of the mint, who was charged by law with the safe-keeping of and accounting for the same to the United States; that $22,500,000 of said money was placed by the superintendent in the melter and refiner's vault in said mint, and that the combination of the lock of said vault was placed by the superintendent in the possession of the superintendent of the mint, of the chief clerk of the mint, and of the defendant, as cashier in the mint, all of whom had legal and actual access to said vault. The defendant denies that he received this money, or had it in his possession or custody or safe-keeping or under his control, or that it was his duty to account for or pay over the same to the United States. He alleges that all of the money in this vault was duly accounted for and paid over to the government by the superintendent of the mint; that

the remainder of the money, to wit, $25,440,930, which had been received by the superintendent, was by the superintendent placed in the vault known as the cashier's vault, and that the combination of said vault was, by order of the superintendent, placed in the possession of the superintendent, the chief clerk of the mint, and of the defendant, as cashier of the mint, and that each of the three persons had legal and actual access to said vault. He denies that he received the money in this vault, or had it in his possession or custody or safe-keeping or under his control, or that it was his duty to account for or pay over the same to the United States, but alleges that the superintendent has accounted for and paid over to the United States all but $30,000 of this money. He alleges that Walter N. Dimmick was at the time chief clerk of the mint, and, as such, had legal and actual access to the cashier's vault; that, in the absence of the defendant and of the superintendent, and while acting as superintendent, Dimmick stole and carried away the $30,000 in question, without any fault or negligence of the defendant; that Dimmick has been indicted, tried, and convicted for stealing the $30,000; that the government demanded from Dimmick's bondsmen the full penalty of his bond, to wit, $5,000, and the same has been paid by the surety on Dimmick's bond to the government, leaving the shortage $25,000.

To each part of this answer plaintiff has demurred on the ground that it does not constitute a defense; and plaintiff has also moved to strike out all that part of the answer relating to the theft by Dimmick, on the ground that it constitutes no defense to the action.

The facts set out in the answer as a defense must be taken as true, so far as this demurrer is concerned. We therefore have before us the question whether or not the defendant, Cole, having that connection with the money in dispute which is set out in the answer, can be held to have had that money in his possession and safe-keeping, so as to make him responsible as an insurer of the money deposited in the mint, and therefore accountable for the money stolen by Dimmick.

It will be observed that the theft alleged in this answer is not merely the ordinary theft of a subordinate or stranger, but a theft by Cole's superior officer, who was by law the acting superintendent of the mint at the time of the theft, and by law given the actual custody and control of all the money in the mint, including the money in the cashier's vault. The Revised Statutes place the duty of receiving, possessing, safely keeping, and accounting for the money in a mint upon four officers in the mint, to wit, the superintendent, the assayer, the melter and refiner, and the coiner.

Under section 3497 of the Revised Statutes [U. S. Comp. St. 1901, p. 2338], the superintendent of the mint is made the treasurer of the mint. This section provides as follows:

"Sec. 3497. The superintendent of the mints at Philadelphia, San Francisco, and New Orleans shall be, and perform the duties of, treasurers of said mints respectively."

Under section 3506 of the Revised Statutes [U. S. Comp. St. 1901, p. 2341], the superintendent of the mint is required to receive and

safely keep all the moneys in the mint, except when the same is legally in the hands of other officials. The section reads as follows:

"Sec. 3506. The superintendent of each mint shall receive and safely keep, until legally withdrawn, all moneys or bullion which shall be for the uses or expenses of the mint. He shall receive all bullion brought to the mint for assay or coinage; shall be the keeper of all bullion or coin in the mint, except while the same is legally in the hands of other officers."

Section 3496 [U. S. Comp. St. 1901, p. 2338] provides who the officers of the mint shall be. It reads as follows:

"Sec. 3496. The officers of each mint shall be a superintendent, an assayer, a melter and refiner, and a coiner; and, for the mint at Philadelphia, an engraver; all to be appointed by the President, by and with the advice and consent of the Senate."

The Revised Statutes provide when and in what cases and under what circumstances the superintendent of the mint can place coin or bullion legally in the hands of the assayer or the melter and refiner or the coiner, but there is no provision for his placing coin or bullion legally in the hands of any one except the officers named.

The defense is that Cole was not an officer of the government; that he was merely an employé of the mint.

The Constitution of the United States provides, in article 2, § 2, that the President "shall nominate, and by and with the advice and consent of the Senate, shall appoint, ambassadors, other public ministers, and consuls, judges of the Supreme Court, and all other officers of the United States whose appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by law vest the appointment of such inferior officers as they think proper in the President alone, in the courts of law, or in the heads of departments."

It appears that the defendant, Cole, was appointed an employé of the mint under section 3504 of the Revised Statutes [U. S. Comp. St. 1901, p. 2340], which provides that the superintendent of the mint "shall also appoint all assistants, clerks, one of whom shall be designated 'chief clerk,' and workmen employed under his superintendence. * * * He shall forthwith report to the director of the mint the names of all persons appointed by him, the duties to be performed, the rate of compensation, the appropriation from which compensation is to be made, and the grounds of the appointment; and if the director of the mint shall disapprove the same, the appointment shall be vacated."

The appointment of Cole by the superintendent, and his designation as cashier in the mint, did not make him an officer of the United States, under the provisions of the Constitution. He is therefore not one of the persons under whose control or in whose custody money or bullion may be placed, under the provisions of section 3506 of the Revised Statutes. In other words, he is not an officer of the United States. The cashier in a mint is a mere clerk appointed by the superintendent of the mint, performing only such duties as the superintendent may direct. He is not a public officer charged with the receiving or safe-keeping or accounting for the money which comes

into the mint, but only acts for the superintendent, and his receiving, keeping, and accounting for, is merely that of the superintendent, whose clerk he is.

In United States v. Germaine, 99 U. S. 508, 25 L. Ed. 482, the defendant was a pension surgeon, who had been appointed by the Commissioner of ·Pensions under the act of March 3, 1873, c. 234, 17 Stat. 576 (Rev. St. § 4777 [U. S. Comp. St. 1901, p. 3293]); his duties being to make periodical examination of pensioners, and to examine applicants for pension when necessary, receiving a prescribed fee for each examination. He was indicted, under chapter 65, § 12, of the act of March 3, 1825 (4 Stat. 118), for extortion in having unlawfully collected fees from pensioners. A demurrer was interposed, and the question whether the defendant, under his appointment, was an officer of the United States, within the meaning of the act, was certified to the Supreme Court of the United States. After reciting the provisions of the Constitution above quoted, the court said:

"The Constitution, for purposes of appointment, very clearly divides all its officers into two classes. The primary class requires a nomination by the President and confirmation by the Senate. But foreseeing that, when offices became numerous and sudden removals necessary, this mode might be inconvenient, it was provided that, in regard to officers inferior to those specially mentioned, Congress might by law vest their appointment in the President alone, in the courts of law, or in the heads of departments. That all persons who can be said to hold an office under the government about to be established under the Constitution were intended to be included within one or the other of these modes of appointment, there can be but little doubt. This Constitution is the supreme law of the land, and no act of Congress is of any validity which does not rest on authority conferred by that instrument. It is therefore not to be supposed that Congress, when enacting a criminal law for the punishment of officers of the United States, intended to punish any one not appointed in one of those modes. If the punishment were designed for others than officers as defined by the Constitution, words to that effect would be used, as 'servant,' 'agent,' 'person in the service or employment of the government'; and this has been done where it was so intended, as in the sixteenth section of the act of 1846, concerning embezzlement, by which any officer or agent of the United States, and all persons participating in the act, are made liable. 9 Stat. 59."

The court held that as the defendant was not appointed by any of the persons designated by the Constitution, or in the manner there provided, he was not an officer of the United States, within its meaning, and therefore not indictable under the act of 1825.

The case of United States v. Smith, 124 U. S. 531, 8 Sup. Ct. 595, 31 L. Ed. 534, is directly in point; the question submitted to the Supreme Court being whether or not a clerk appointed by the collector of customs at New York, who had assigned to him the duty of receiving public money paid into the office of the collector, was a public officer of the United States, under section 3639 of the Revised Statutes [U. S. Comp. St. 1901, p. 2422], and charged with the safe-keeping of the money received by him, and required to account for the same to the United States. The court held that he was not. The decision was rendered by Justice Field, in which he says:

"He [the defendant] is designated as a clerk in the office of the collector of customs, and is thus shown not to be charged by an act of Congress with the safe-keeping of the public moneys, contrary to the averments of the indict-

ment. The courts of the United States are presumed to know the general statutes of Congress, and any averment in an indictment inconsistent with a provision of a statute of that character must necessarily fail, the statute negativing the averment. No clerk of a collector of customs is, by section 3639 of the Revised Statutes [U. S. Comp. St. 1901, p. 2422], charged with the safekeeping of the public moneys. * * *

"A clerk of the collector is not an officer of the United States, within the provisions of this section; and it is only to persons of that rank that the term 'public officer,' as there used, applies. An officer of the United States can only be appointed by the President, by and with the advice and consent of the Senate, or by a court of law, or the head of a department. A person in the service of the government who does not derive his position from one of these sources is not an officer of the United States in the sense of the Constitution. This subject was considered and determined in United States v. Germaine, 99 U. S. 508 [25 L. Ed. 482], and in the recent case of United States v. Mouat, 124 U. S. 303 [8 Sup. Ct. 505, 31 L. Ed. 463]. What we have here said is but a repetition of what was there authoritatively declared.

"The number of clerks the collector may employ may be limited by the Secretary of the Treasury, but their appointment is not made by the secretary, nor is his approval thereof required. The duties they perform are as varied as the infinite details of the business of the collector's office, each taking upon himself such as are assigned to him by the collector. The officers specially designated in section 3639 are all charged by some act of Congress with duties connected with the collection, disbursement, or keeping of the public moneys, or to perform other duties as fiscal agents of the government. A clerk of a collector, holding his position at the will of the latter, discharging only such duties as may be assigned to him by that officer, comes neither within the letter nor the purview of the statute. And we are referred to no other act of Congress bearing on the subject, making a clerk of the collector a fiscal agent of the government, or bringing him within the class of persons charged with the safe-keeping of any public moneys.

"The case of United States v. Hartwell, 6 Wall. 385 [18 L. Ed. 830], does not militate against this view. The defendant there, it is true, was a clerk in the office of the Assistant Treasurer at Boston, but his appointment by that officer under the act of Congress could only be made with the approbation of the Secretary of the Treasury. This fact, in the opinion of the court, rendered his appointment one by the head of the department, within the constitutional provision upon the subject of the appointing power. The necessity of the secretary's approbation to the appointment distinguishes that case essentially from the one at the bar. The secretary, as already said, is not invested with the selection of the clerks of the collector; nor is their selection in any way dependent upon his approbation. It is true, the indictment alleges that the appointment of the defendant as clerk was made with such approbation, but, as no law required this approbation, the averment cannot exert any influence on the mind of the court in the disposition of the questions presented. The fact averred, if it existed, could not add to the character or powers or dignity of the clerk. The Constitution, after providing that the President shall nominate, and, by and with the advice and consent of the Senate, shall appoint, ambassadors, other public ministers, and consuls, judges of the Supreme Court, and all other officers of the United States whose appointments are not otherwise provided for, which should be established by law, declares that 'the Congress may by law vest the appointment of such inferior officers as they think proper in the President alone, in the courts of law, or in the heads of departments.' There must be, therefore, a law authorizing the head of a department to appoint clerks of the collector before his approbation of their appointment can be required. No such law is in existence.

"Our conclusion, therefore, is that section 3639 of the Revised Statutes does not apply to clerks of the collector, and that such clerks are not appointed by the head of any department, within the meaning of the constitutional provision."

Under the law as declared by the Supreme Court in these two cases, the allegations of the answer of the defendant in this case

constitute a sufficient defense to the action. The demurrer to the answer is therefore overruled, and the motion to strike out parts of the answer denied.