JEFFERSON FIRE INS. CO. v. BIERCE & SAGE, Inc.

(Circuit Court, E. D. Michigan, S. D. December 7, 1910.)

**1. EQUITY (§ 39\*)—INJUNCTION—DISSOLUTION—JURISDICTION.**

Where in a suit by an insurance company against its general agent, after cancellation of the agency contract, to compel an accounting of premiums and construction of the contract, an injunction against any proceedings under the arbitration clause of the contract, was dissolved, and an ex parte arbitration resulted in an award to the agent of damages for wrongful cancellation, whereupon a suit was brought at law to recover the award, the dissolution of the injunction did not divest the equity court of its right to state an account and construe the contract.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 104–114; Dec. Dig. § 39.\*]

**2. CONTRACTS (§ 127\*)—OUSTING JURISDICTION OF COURT—VALIDITY.**

A provision in an insurance agency contract that in the event of misunderstanding as to the meaning of its terms, or operations thereunder, the same should be settled in an equitable manner, and all differences should be referred to arbitration, the parties waiving a right of appeal to a court of law or equity from the decision of the arbitrators, was void as an attempt to oust the courts from all jurisdiction over any controversy that might arise under the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 608–615; Dec. Dig. § 127.\*]

**3. ARBITRATION AND AWARD (§ 8\*)—PROVISION FOR ARBITRATION—VALIDITY—LIMITATIONS.**

The limitations to the rule that an arbitration agreement ousting the courts of all jurisdiction over controversies that might arise thereunder is void, do not go beyond cases where the advance agreement is to submit to general arbitration specific questions of fact, the determination of which is a condition precedent to legal action, or to submit to a supervising umpire or technical expert questions of fact arising under his supervision, or pertaining to his specialty, and such questions of construction, or of law as are incidental to any controversy that may arise on such subject.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 29; Dec. Dig. § 8.\*]

**4. ARBITRATION AND AWARD (§ 8\*)—AGREEMENT TO ARBITRATE—CONSTRUCTION.**

An agreement in an agency contract to submit all matters of difference to arbitration without right of appeal from the award, could not be construed as limited to a means of fixing damages in connection with a possible judicial holding that a cancellation of the contract by the insurance company was unlawful and sustained as so construed.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 29; Dec. Dig. § 8.\*]

**5. COURTS (§ 372\*)—FEDERAL COURTS—MATTERS OF GENERAL LAW—VALIDITY OF ARBITRATION AGREEMENT.**

The invalidity of an arbitration agreement to oust the courts of all jurisdiction over the subject of a controversy, under the contract, is a matter of general law, as to which federal courts are not bound by state decisions.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. INSURANCE (§ 79\*)—AGENCY CONTRACT—TERMINATION.**

An insurance agency contract provided that it should become effective on January 1, 1908, and continue in force until December 31, 1918, and from year to year thereafter "unless previously canceled as hereinafter provided." "This agreement may be canceled at any time by giving 30 days' notice in writing, by either party to this agreement of such intention to terminate the same." *Held*, that the term of the contract was limited by the condition "unless previously canceled as hereinafter provided," and that the contract was therefore subject to cancellation by either party without liability for damages by giving 30 days' notice to the other, in the absence of bad faith or fraud.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 104; Dec. Dig. § 79.\*]

**7. INSURANCE (§ 82\*)—AGENCY—TERMINATION—GUARANTY OF COLLECTIONS—WAIVER.**

Where after complainant insurance company had canceled an agency contract, it sued for an accounting and by the appointment of a receiver deprived defendant of the power to collect further premiums under the contract, such proceedings operated as a waiver of defendant's guaranty of premiums.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 107, 108; Dec. Dig. § 82.\*]

**8. INSURANCE (§ 82\*)—AGENTS—ACCOUNTING—RECEIVERS—FEES AND DISBURSEMENTS.**

Where in a suit for the cancellation of an insurance agency contract, and for an accounting defendant's unlawful refusal to pay over premiums collected led to the appointment of a receiver, defendant was liable for the receiver's fees and disbursements, though it offered to give bond to secure the premiums collected; complainant not being required to accept security which might require a suit to enforce.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 82.\*]

Action by the Jefferson Fire Insurance Company against Bierce & Sage, Incorporated.   Decree for complainant.

Miller, Smith, Paddock & Perry (George Quintard Horwitz, of counsel), for complainant.

Stevenson, Carpenter & Butzel, for defendant.

DENISON, District Judge (sitting by designation).   Defendant was general agent for complainant in four states.   The Insurance Company, by notice, undertook to terminate the agency.   The agent denied the rightfulness of the termination, and refused to account for or pay over premiums in its hands, claiming the right to accumulate them and apply them against its damages for the unlawful cancellation.   The Insurance Company filed this bill to obtain (1) an accounting of premiums and delivery of these trust moneys, (2) a construction of the contract, and (3) an injunction against any proceedings under the arbitration clause of the contract.   A receiver for the premiums was appointed and an injunction issued.   Later, the injunction was dissolved, the arbitration (ex parte) resulted in an award to the agent of $32,000 damages for the wrongful cancellation, and a suit at law to recover this award is pending.

It is first urged that Judge Swan's dissolution of the injunction leaves nothing in this case, except the accounting. The matter being one of complicated accounts between principal and agent involving trust funds, and the defendant claiming, by its letters and by its answer, the right to withhold premiums under its construction of its contract rights, the court had undoubted jurisdiction, not only to state an account, but to construe the contract so as to determine the very controversy out of which the failure to account arose; but there was no necessary reason why defendant should be enjoined from proceeding with the steps preliminary to the trial of its claim at law. It may well have been thought that these proceedings might be allowed in order that the entire matter might be so far along towards a final disposition upon either result of this present cause. I do not think it was intended to transfer the main question to the law court so that this court could not decide that question, if, in regular course, it should first be reached for decision in this court; as it has been now reached.

The right of this or of any court to determine whether the Insurance Company could cancel the contract without special cause, depends upon the arbitration clause which is:

"In the event of any misunderstanding as to the meaning of these presents or as to the operations thereunder, the same shall be settled in an equitable manner (sic) than a legal manner, and all differences shall be referred to arbitration * * * whose decision shall be final. The parties to this agreement hereby waive the right of appeal to a court of law or equity from the decision of the arbitrators."

A more complete ouster of courts from all jurisdiction could not well be formulated; and it is void under the familiar rule declared by the English courts in Scott v. Avery, 5 H. of L. Cases, 827, and by the United States Supreme Court in Home Insurance Company v. Morse, 20 Wall. 445, 22 L. Ed. 365. The well-considered exceptions to and limitations of this rule do not go beyond the cases where the advance agreement was (1) to submit to general arbitration specific questions of fact, the determination of which is a condition precedent to any legal action, or (2) to submit to a supervising umpire or a technical expert or one man who is both, questions of fact arising under his supervision or pertaining to his specialty, and such questions of construction or of law as are incidental to the controversy which may arise upon such subject. Munson v. Straits, etc., Co. (D. C.) 99 Fed. 787, affirmed 100 Fed. 1005, 41 C. C. A. 156; R. R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; Conners v. U. S. (C. C.) 130 Fed. 614, affirmed on this point 141 Fed. 16, 72 C. C. A. 272; Memphis Trust Co. v. Brown & Ketchum Co. (6th Circuit) 166 Fed. 398, 93 C. C. A. 162; Spurrier v. La Cloche, Appeal Cases H. of L., 1902, p. 446. The circumstances of the present case do not bring it within any of these exceptions or limitations. The basic controversy here is wholly one of meaning and construction, and does not involve any application of the contract to facts arising during its execution, but existed to its full extent the moment the contract was signed.

Defendant's counsel suggests that the agreement may stand as a means of fixing damages in connection with a possible judicial holding that the cancellation was unlawful. The agreement cannot be saved by reading into it any such limitation not found in its language. There was no lawful foundation upon which the arbitration proceedings could be commenced; and being, as they were in this case, repudiated as soon as proposed and never accepted or acquiesced in to any extent, they had no legal force whatever.

It is further urged that the contract was a Pennsylvania contract, and that, under Pennsylvania decisions, the arbitration agreement is valid. The premise that this should be considered a Pennsylvania contract may be assumed; but I do not think the decisions in that state justify the conclusion. The two latest cited (McCune v. Lytle. 197 Pa. 401, 47 Atl. 190, and Zehner v. Lehigh Co., 187 Pa. 487, 41 Atl. 464, 67 Am. St. Rep. 586), may be considered typical. Each announces only the rule that an independent, complete submission, made upon a complete consideration, cannot be revoked. The general rule of invalidity is fully recognized in Pennsylvania (Mentz v. Armenia. 79 Pa. 478, 21 Am. Rep. 80, and see review of Pennsylvania cases in Mitchell v. Dougherty, 90 Fed. 639, 33 C. C. A. 205).

Further, it has been held that this very question of validity is a matter of general law as to which federal, and not Pennsylvania, decisions should be followed:

"The question is not as to the enforcement of the contract according to the law of the place where it was made, but is as to whether a court of the United States should * * * refuse to enforce the contract at all. Upon this question, the decisions of the Supreme Court of the United States are controlling, and they admit of but one conclusion." Dallas, C. J., in Mitchell v. Dougherty (3d Circuit) 90 Fed. 645, 33 C. C. A. 211.

This brings us to the question of the right to cancel the contract, as was done, upon the 30-day notice given in January, 1910. The governing clause is as follows:

"18. This agreement becomes effective on the first day of January, 1908, and shall continue in force until December 31st, 1918, and from year to year thereafter unless previously canceled as hereinafter provided. This agreement may be canceled * * * at any time by giving thirty days' notice, in writing, by either party to this agreement of such intention to terminate the same."

I think this language is free from doubt. The agency would unquestionably be revocable at will, except for the statement of a fixed term, but this statement is, itself, subject to the condition "unless previously canceled as hereinafter provided." The absence of a comma after "thereafter" cannot operate to tie the condition to the next preceding clause only, rather than to all preceding clauses of the sentence to which it is appropriate. The next section says the agreement may be canceled "at any time." To say that "at any time" does not mean what it says, but means "at any time after the first ten years" is, to me, a strained and unnatural construction. The

argument of probability is insufficient to vary the plain words. There would be reasons why a general agent would hesitate to devote his time and money to building up a business unless the agency was assured to him for a fixed period; but this consideration applies with varying force to all commission agencies, and it is common knowledge that such agencies very often, if not usually, are not for a fixed period, but are revocable. The improbability that an agent would knowingly enter into such a contract revocable at the will of the company, is not so great as the improbability that the company would knowingly tie itself to an agent by a bond that, for 10 years, it could not break, unless by legal evidence it could prove that there was misconduct serious enough for a jury to consider to be "good cause."

It is to be noted that this contract does not provide at all for revocation for cause, and the absence of any specification of what cause is to be sufficient ground for canceling pending the stated period, is additional reason for thinking that the 30-day clause, operative without cause, could be resorted to "at any time." This right of cancellation was not one-sided. It belonged to the agent also. It is more or less improbable that general agents would intend to bind themselves to use their best efforts to push the business of one company for 10 years, no matter how undesirable and unpopular that company might become. Nor is the general agent's loss of time and effort, when such an agency is canceled, as total as might be thought. A general agent's main efforts, when he represents several companies, are devoted to building up a force of active and able sub-agents who can get the business, which business will then be divided among the general agent's various companies. Manifestly, when an agency loses one company, it can save for itself a part, perhaps the larger part, of the business which has been carried in that company. These considerations all confirm me in the conclusion that this agency was lawfully revoked, without liability for damages therefor, by notice taking effect on February 10, 1910. I do not think any parol evidence is admissible bearing on the meaning of this clause, and I have not considered the evidence of the sayings or doings of the parties, except far enough to be assured that the company was, in fact, dissatisfied with the agency, and did not give defendant notice in bad faith or fraudulently.

Defendant's counsel, relying upon the pendency of the suit at law, did not take any evidence in this cause. If he desires so to do to perfect the record, he may take further evidence within 20 days from this date, and complainant may reply within 10 days.

The formal decree filed herewith may be entered on January 10, 1911, unless counsel think that any additional evidence taken would affect the result in view of what I have said above; in which case, they may call such new evidence to my attention.

As to the uncollected accounts, it is not equitable that complainant should insist upon the defendant's guaranty, found in the contract, and at the same time deprive defendant of the power to collect, as was done by procuring the appointment of a receiver. The resort to

these proceedings operated as a waiver of the guaranty. The accounts belong to the complainant.

Defendant should pay the receiver's fees and disbursements allowed. Its refusal to pay over the premiums led to the appointment of a receiver, and this refusal has been found unlawful. True, it offered to give a bond, but complainant was not obliged to accept security which might require another suit to enforce.