UNITED STATES ASPHALT REFINING CO. v. TRINIDAD LAKE PETROLEUM CO. Limited (two cases).

(District Court, S. D. New York. January 23, 1915.)

Nos. 58–115, 58–121.

1. COURTS ⟨⟩372—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

An agreement in a contract that differences arising thereunder shall be submitted to arbitration relates to the remedy, and the question whether such an agreement is enforceable is governed by the law of the forum, and where that is a federal court the law of decision in the state is not controlling.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. ⟨⟩372.]

2. CONTRACTS ⟨⟩127—LEGALITY OF PROVISIONS—AGREEMENT TO ARBITRATE DISPUTES ARISING UNDER CONTRACT.

A provision in a charter party made in London that "any dispute arising under this charter shall be settled in London by arbitration, * * * and this decision shall be binding upon both parties," is an agreement for arbitration applying to the entire contract; and, while valid under the English Arbitration Act of 1889, under the rule laid down in the decisions of the Supreme Court it is void in a federal forum.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 608–615; Dec. Dig. ⟨⟩127.]

In Admiralty. Suits by the United States Asphalt Refining Company against the Trinidad Lake Petroleum Company, Limited. On motions by defendant to stay prosecution of the suits until further order of the court. Denied.

Norman B. Beecher, of New York City, for the motions.

Herbert Barry and James K. Symmers, of New York City, opposed.

HOUGH, District Judge. One of these actions is brought for the alleged breach of the charter party of the steamship Russian Prince, and the other for a similar breach of a like charter party relating to the steamship Roumanian Prince. Libelant is a corporation of South Dakota. Respondent was the chartered owner of the steamships above named. It is a British corporation, and the vessels are of British registry.

The charter parties by which libelant took the steamers from respondent were made in London, and granted libelant the right to use the vessels in any lawful traffic in most parts of the world. As matter of fact the steamers were employed between Trinidad and United States ports until the outbreak of war in August, 1914, when it is alleged that the vessels were wrongfully withdrawn from charterer's service. These actions in personam were begun with clause of foreign attachment, and appearance enforced by seizure of funds within this jurisdiction. Before any steps in the actions other than appearing and giving security for the seized property had been taken, these motions were made.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The charter party of each steamer contained the following very ordinary clause:

"19. Any dispute arising under this charter shall be settled in London by arbitration, the owners and charterers each appointing an arbitrator, and the two so chosen, if they do not agree, shall appoint an umpire, the decision of whom shall be final. Should either party refuse or neglect to appoint an arbitrator within 21 days of being required to do so by the other party, the arbitrator appointed may make a final decision alone, and this decision shall be binding upon both parties. For the purpose of enforcing any award, this agreement shall be made a rule of court."

There can be no doubt that this was a submission to arbitration, and for that reason was a contract between the parties to this action; District of Columbia v. Bailey, 171 U. S. at page 171, 18 Sup. Ct. 868, 43 L. Ed. 118; citing Whitcher v. Whitcher, 49 N. H. 176, 6 Am. Rep. 486. It is equally plain that under the law of the place of the contract—i. e. England—this arbitration agreement was at the time of making the charter parties entirely valid, and any endeavor to do exactly what libelant has done by bringing these suits would have been restrained by the English courts, acting under authority of the English Arbitration Act of 1889 (chapter 49, 52–53 Victoria). See, also, Manchester Ship Canal Co. v. Pierson & Son [1900] 2 Q. B. 606; Austrian Lloyd Co. v. Gresham, etc., Society [1903] 1 K. B. 249.

The contentions of the parties litigant may therefore be summed up as follows: Respondent urges that the contract for arbitration contained in the charter parties was valid and enforceable when and where it was made, and must consequently be enforced everywhere, unless some positive rule of the law of the forum prevents such recognition and enforcement. Libelant asserts that, whether the contract was or was not good at the time and place of making, it has always been invalid under the law of the United States and most of the states thereof, with the admitted and asserted result that an American may make a solemn contract of this nature in England and repudiate it at will in America with the approbation of the courts of his own country.

There has long been a great variety of available reasons for refusing to give effect to the agreements of men of mature age, and persumably sound judgment, when the intended effect of the agreements was to prevent proceedings in any and all courts and substitute therefor the decision of arbitrators. The remarkably simple nature of this libelant's contract breaking has led me to consider at some length the nature and history of the reasons adduced to justify the sort of conduct, by no means new, but remarkably well illustrated by these libels.

It has never been denied that the hostility of English-speaking courts to arbitration contracts probably originated (as Lord Campbell said in Scott v. Avery, 4 H. L. Cas. 811)—

"in the contests of the courts of ancient times for extension of jurisdiction—all of them being opposed to anything that would altogether deprive every one of them of jurisdiction."

A more unworthy genesis cannot be imagined. Since (at the latest) the time of Lord Kenyon, it has been customary to stand rather upon the antiquity of the rule than upon its excellence or reason:

"It is not necessary now to say how this point ought to have been determined if it were res integra—it having been decided again and again," etc. Per Kenyon. J., in Thompson v. Charnock, 8 T. R. 139.

There is little difference between Lord Kenyon's remark and the words of Cardozo, J., uttered within a few months in Meacham v. Jamestown, etc., R. R. Co., 211 N. Y. at page 354, 105 N. E. at page 656:

"It is true that some judges have expressed the belief that parties ought to be free to contract about such matters as they please. In this state the law has long been settled to the contrary."

Nevertheless the legal mind must assign some reason in order to decide anything with spiritual quiet, and the causes advanced for refusing to compel men to abide by their arbitration contracts may apparently be subdivided as follows:

(a) The contract is in its nature revocable.

(b) Such contracts are against public policy.

(c) The covenant to refer is but collateral to the main contract, and may be disregarded, leaving the contract keeper to his action for damages for breach of such collateral covenant.

(d) Any contract tending to wholly oust the courts of jurisdiction violates the spirit of the laws creating the courts, in that it is not competent for private persons either to increase or diminish the statutory juridical power.

(e) Arbitration may be a condition precedent to suit, and as such valid, if it does not prevent legal action, or seek to determine out of court the general question of liability.

### The Doctrine of Revocability.

This seems to rest on Vynior's Case, 8 Coke, 81b, and is now somewhat old-fashioned, although it appears in Oregon, etc., Bank v. American, etc., Co. (C. C.) 35 Fed. 23, with due citations of authority; and in Tobey v. County of Bristol, 3 Story, 800, Fed. Cas. No. 14,065, it is treated at great length.

### The Public Policy Doctrine.

No reason for the simple statement that arbitration agreements are against public policy has ever been advanced, except that it must be against such policy to oust the courts of jurisdiction. This is hardly a variant of the reasoning ascribed by Lord Campbell to the "courts of ancient times":

"Such stipulations [for arbitration] are regarded as against the policy of the common law, as having a tendency to exclude the jurisdiction of the courts." Hurst v. Litchfield, 39 N. Y. 377.

"Such agreements have repeatedly been held to be against public policy and void." Prince Co. v. Lehman (D. C.) 39 Fed. 704, 5 L. R. A. 464.

The above are two examples of the cruder forms of statement; but of late years the higher courts have been somewhat chary of the phrase "public policy," and in Insurance Co. v. Morse, 20 Wall. 457, 22 L. Ed. 365, Hunt, J., quotes approvingly from Story's Commentaries, thus:

"Where the stipulation, though not against the policy of the law, yet is an effort to divest the ordinary jurisdiction of the common tribunals of justice, such as an agreement in case of dispute to refer the same to arbitration, a court of equity will not, any more than a court of law, interfere to enforce the agreement, but will leave the parties to their own good pleasure in regard to such agreements."

But neither the court nor the commentator pointed out any other method by which an arbitration agreement could be against the policy of the law, unless it were by seeking to divest the "ordinary jurisdiction of the common tribunals of justice."

Having built up the doctrine that any contract which involves an "ouster of jurisdiction" is invalid, the Supreme Court of the United States has been able of late years to give decision without ever going behind that statement. Thus in Insurance Co. v. Morse, supra, it is said:

"Agreements in advance to oust the courts of the jurisdiction conferred by law are illegal and void."

In Doyle v. Continental Insurance Co., 94 U. S. 535, 24 L. Ed. 148, the case last cited is distinctly reaffirmed. The lower courts have followed, and in Perkins v. United States, etc., Co. (C. C.) 16 Fed. 513, Wallace, J., said:

"It is familiar doctrine that a simple agreement inserted in a contract, that the parties will refer any dispute arising thereunder to arbitration, will not oust courts of law of their ordinary jurisdiction."

Even a partial ouster was held "evidently invalid" when inserted in a bill of lading, in The Etona (D. C.) 64 Fed. 880, citing Slocum v. Western Assurance Co. (D. C.) 42 Fed. 236, and the Guildhall (D. C.) 58 Fed. 796.

### The Doctrine That the Covenant to Refer is Collateral Only.

This idea is set forth with his customary clearness by Jessel, M. R., in Dawson v. Fitzgerald, 1 Ex. D. 257. It was repeated in Perkins v. United States, etc., Co., supra, and accepted in Crossley v. Connecticut, etc., Co. (C. C.) 27 Fed. 30. The worthlessness of the theory was amply demonstrated in Munson v. Straits of Dover (D. C.) 99 Fed. 787, affirmed 102 Fed. 926, 43 C. C. A. 57, where Judge Brown, accepting without query or comment the doctrine that any agreement which completely ousted the courts of jurisdiction was specifically unenforceable, found himself unable to award more than nominal damages for the breach of the collateral agreement. The opinion for affirmance (102 Fed. 926, 43 C. C. A. 57) is written by Wallace, J., who had himself pointed out in Perkins v. United States, etc., Co., supra, that the action for breach of the collateral agreement to refer was a remedy against the contract breaker who sued when he had promised not to. Comment seems superfluous upon any theory of law (if law be justice) that can come to such conclusions.

### The Theory That Arbitration Agreements Violate the Spirit of the Laws Creating the Courts.

This is the accepted doctrine in New York, as shown in Meacham v. Jamestown, etc., Railroad, supra. Yet it is surely a singular view of

juridical sanctity which reasons that, because the Legislature has made a court, therefore everybody must go to the court.

## The Theory That a Limited Arbitration, Not Ousting the Courts of Jurisdiction, May be Valid.

This is thought to be the doctrine of Delaware, etc., Co. v. Pennsylvania, etc., Co., 50 N. Y. 265, and it is plainly accepted by the Supreme Court of the United States. Hamilton v. Liverpool, etc., Insurance Co., 136 U. S. at page 255, 10 Sup. Ct. 945, 34 L. Ed. 419, shows the familiar proviso in an insurance policy by which the *amount* of loss or damage to the property insured shall be ascertained by arbitrators or appraisers, and further that, until such an award should be obtained, the loss should not be payable and no action should lie against the insurer. This makes the appraisal or partial arbitration a condition precedent to suit. Gray, J., said:

"Such a stipulation, not ousting the jurisdiction of the courts, but leaving the general question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid, according to the uniform current of authority in England and in this country."

In Hamilton v. Home Insurance Co., 137 U. S. at page 385, 11 Sup. Ct. at page 138, 34 L. Ed. 708, the same learned Justice said (of a somewhat similar proviso in an insurance policy):

"If the contract * * * provides that no action upon it shall be maintained until after such an award, * * * the award is a condition precedent to the right of action."

But persons who would thus far avail themselves of compulsory arbitration must be careful, for it has been said:

"While parties may impose, as a condition precedent to applications to the courts, that they shall first have settled the amount to be recovered by an agreed mode, they cannot entirely close the access to the courts of law. * * * Such stipulations are repugnant to the rest of the contract and assume to divest courts of their established jurisdiction. As conditions precedent to an appeal to the courts, they are void." Stephenson v. Insurance Co., 54 Me. 70, cited in Insurance Co. v. Morse, supra.

Finally, in Guaranty, etc., Co. v. Green Cove, etc., R. R. Co., 139 U. S. at page 142, 11 Sup. Ct. at page 514, 35 L. Ed. 116, Brown, J., considered a proviso in a mortgage to the effect that a sale by the trustee should be "exclusive of all other" methods of sale, and he laid down the law thus:

"This clause, * * * is open to the objection of attempting to provide against a remedy in the ordinary course of judicial proceedings, and oust the jurisdiction of the courts, which (as is settled by the uniform current of authority) cannot be done."

This decision was filed in 1890. The latest opinion in this circuit known to me is Gough v. Hamburg, etc., Co. (D. C.) 158 Fed. 174, where Adams, J., lays down the rule without comment that any limitation upon the jurisdiction of courts contained in a contract is void.

Whatever form of statement the rule takes, the foregoing citations show that it always amounts to the same thing, viz.: The courts will scarcely permit any other body of men to even partially perform judi-

cial work, and will never permit the absorption of all the business growing out of disputes over a contract by any body of arbitrators, unless compelled to such action by statute. Even such cases as Mittenthal v. Mascagni, 183 Mass. 19, 66 N. E. 425, 60 L. R. A. 812, 97 Am. St. Rep. 404, show no more than a belated acceptance of the right to confine litigation by contract to a particular court, for even that opinion does not recognize the right of mankind to contract themselves out of all courts.[1]

The English Arbitration Act, supra, is such a statute. It has compelled the courts of that country to abandon the doctrine that it is wrong or wicked to agree to stay away from the courts when disputes arise. It is highly characteristic of lawyers that, when thus coerced by the Legislature, the wisdom of previous decisions begins to be doubted. In Hamlyn v. Talisker Distillery [1894] App. Cas. 202, Lord Watson said:

"The rule that a reference to arbitrators not named cannot be enforced does not appear to me to rest on any essential considerations of public policy. Even if an opposite inference were deducible from the authorities by which it was established, the rule has been so largely trenched upon by the *legislation* of the last 50 years * * * that I should hesitate to affirm that the policy upon which it was originally based could now be regarded as of cardinal importance."

Neither the Legislature of New York nor the Congress has seen fit thus to modernize the ideas of the judges of their respective jurisdictions.[2]

[1] The question presented by these motions is to be regarded as one of general law; i. e., one wherein the courts of the United States are not bound to follow or conform to the decisions of the state jurisdiction in which they may happen to sit. This was intimated by Dallas, J., in Mitchell v. Dougherty, 90 Fed. 639, 33 C. C. A. 205, and explicitly held in Jefferson Fire Insurance Co. v. Bierce (C. C.) 183 Fed. 588.

Furthermore the question is one of remedy, and not of right. Such was substantially the holding in Mitchell v. Dougherty, supra; and in Stephenson v. Insurance Co., supra, it is pointed out that:

"The law and not the contract prescribes the remedy; and parties have no more right to enter into stipulations against a resort to the courts for their remedy, in a given case, than they have to provide a remedy prohibited by law."

Finally it has been well said by Cardozo, J., in Meacham v. Jamestown, etc., R. R. Co., supra, that:

"An agreement that * * * differences arising under a contract shall be submitted to arbitration relates to the law of remedies, and the law that governs remedies is the law of the forum."

It follows that the final question for determination under these motions is whether the law as laid down by the Supreme Court of the

[1] For a comparison of earlier cases in Massachusetts with the English cases, see an article on "Arbitration as a Condition Precedent," 11 Harvard Law Rev. 234.

[2] It has not seemed necessary to pursue this subject beyond the courts of the United States, New York, and Massachusetts; but, with the possible exception of Pennsylvania, the result would not, I think, be different.

United States permits the enforcement as a remedy of the arbitration clause contained in a contract, assuming that such clause (as here) is intended to oust the courts and all courts of their jurisdiction. .

[2] I think the decisions cited show beyond question that the Supreme Court has laid down the rule that such a complete ouster of jurisdiction as is shown by the clause quoted from the charter parties is void in a federal forum. It was within the power of that tribunal to make this rule. Inferior courts may fail to find convincing reasons for it; but the rule must be obeyed, and these motions be severally denied.