AKTIESELSKABET KORN-OG FODERSTOF KOMPAGNIET v. REDERI-AKTIEBOLAGET ATLANTEN.

(District Court, S. D. New York. February 11, 1916.)

1. ARBITRATION AND AWARD ⚌7—CONSTRUCTION OF CHARTER PARTY—ARBITRATION CLAUSE.

A provision of a charter party that in case of dispute arising it shall be settled by two referees, one to be appointed by the captain and one by the charterer, with power in the two to select an umpire, if necessary was meant to apply only to disputes which might arise during performance of the charter, and has no application where, before the charter was entered upon, the owner deliberately and without excuse repudiated the same and refused to deliver the vessel.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 28; Dec. Dig. ⚌7.]

2. ARBITRATION AND AWARD ⚌7—ARBITRATION CLAUSE IN CHARTER PARTY—CONSTRUCTION AND EFFECT.

An arbitration clause in a charter party, by which a submission to arbitration is made a condition precedent to the bringing of any suit, goes to the remedy, and not to the rights of the parties, and its effect is to be determined by the law of the forum.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 28; Dec. Dig. ⚌7.]

3. ARBITRATION AND AWARD ⚌9—ARBITRATION CLAUSE IN CHARTER PARTY—CONSTRUCTION—EFFECT.

A provision of a charter party for the submission to arbitration of any dispute between the parties *held* a collateral undertaking, and not a condition precedent.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 30; Dec. Dig. ⚌9.]

⚌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. SHIPPING ⬤⟞51—CHARTERS—CONSTRUCTION OF PENALTY CLAUSE IN CHAR-
TER PARTY.·

    A clause in a charter party, "Penalty for nonperformance of this agree-
ment to be proven damages, not exceeding estimated amount of freight,"
cannot be construed to limit the recovery of the charterer from the owner
for an entire repudiation of the charter and a refusal to enter on its per-
formance.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 203–210; Dec.
Dig. ⬤⟞51.]

5. ADMIRALTY ⬤⟞5—JURISDICTION OF COURT—SUIT BETWEEN FOREIGN COR-
PORATIONS.

    It is within the discretion of a court of admiralty of the United States
to take jurisdiction of a suit for breach of charter between two foreign
corporations.

    [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 69–85; Dec.
Dig. ⬤⟞5.]

    In Admiralty. Suit by the Aktieselskabet Korn-Og Foderstof Kom-
pagniet against the Rederiaktiebolaget Atlanten. Decree for libelant.

    This is a libel in admiralty to recover damages for the breach of a charter
party against the owner. On January 8, 1915, the owner without excuse
withdrew the ship from the charter and employed her upon another voyage.
Thereupon the charterer libeled her, and set up the charter party and the
letter of withdrawal as part of his libel. To this the owner pleaded:

    First. That the charter party had been made in Denmark, between two
corporations of Sweden and Denmark, and that the charterer had made no
tender of arbitration under an arbitration clause, valid in Denmark and
Sweden, which read as follows: "(21) If any dispute arises, the same to be
settled by two referees, one appointed by the captain and one by charterers,
or their agents, and, if necessary, the arbitrators to appoint an umpire. The
decision of the arbitrators or umpire, as the case may be, shall be final, and
any party attempting to revoke this submission to arbitration without leave
of a court shall be liable to pay to the other, or others, as liquidated damages,
the estimated amount of chartered freight."

    Second. The owner pleaded that the recovery, if any, must be limited to
the amount of the freight under the following clause No. 24 of the charter
party: "Penalty for nonperformance of this agreement to be proven damages,
not exceeding estimated amount of freight."

    Third. The owner pleaded that this court should not take jurisdiction of
a cause between two foreign corporations.

    Charles Burlingham and Roscoe H. Hupper, both of New York City,
for libelant.

    Clarence B. Smith, of New York City, for respondent.

    LEARNED HAND, District Judge (after stating the facts as
above). Were not the law of Denmark and Sweden pleaded so broad-
ly, I think that it would be possible to dispose of the arbitration clause
without recourse to the question whether such clauses go to the rem-
edy, and not to the right. It is clear that the respondent did not in-
tend to rely upon the clause in the letter of January 8, 1915, and
did not suppose the case was one for arbitration at all. What it did
rely on was the penalty clause, under which it thought itself protected,
and which made it to its interest to repudiate as soon as freight got
above 34 shillings. The attempt at justifying this repudiation wholly
falls. The respondent violated its contract without any shadow of

excuse. It even made the proposal to the libelant to take a new charter at 60 shillings, the libelant to bear the difference between that and the supposed limitation of liability. Any effort to mitigate this violation of good faith on the score of danger to the ship is answered by this proposal to undertake the same voyage.

[1] Aside from the failure of the respondents to rely on arbitration, the clause would itself be irrelevant to the controversy, if the laws of Denmark and Sweden merely permitted arbitration. Though such a clause be valid in those countries, there is no reason to suppose that it has a different interpretation from the reasonable meaning of the words. I should suppose, therefore, that the rule would not be different, as to whether the clause survived an unconditional repudiation, from the rule in this country and Great Britain. If not, I am satisfied that the arbitration clause need not trouble the disposition of the cause, because it could not survive such a total repudiation as this, made without any excuse. This particular clause was certainly not intended to apply to such a case, because the ship's arbitrator was to be picked by her captain, and it is absurd to suppose that the captain was to pick an arbitrator over the withdrawal of her owners. The withdrawal was before the voyage began, even before the ship had been delivered. Whatever be the rule applicable to arbitration clauses of more general form, there can be no doubt that this clause was meant to apply only to disputes which might arise during the voyage, and while the parties were at least trying to go on with its execution. Indeed, the only authority upon the subject which has been cited seems to make it a general rule that such clauses do not survive a general repudiation of the contract. Jureidini v. National British Millers' Ins. Co., [1915] A. C. 499. The theory appears to be that such a provision is part of the execution of the contract, a piece of its administration, and ought not to be construed as applicable to an entire change of purpose which results in the abandonment by one party of the enterprise as a whole.

However, the allegations of the answer do not admit of this method of disposing of the point, for they contain the statements that under the law of Denmark and Sweden arbitration is the condition precedent to any suit in any court "for, upon, or by reason of any matter or dispute with respect to or arising under said charter." This, taken merely as an allegation, and it must be so taken on exceptions, would cover a suit for repudiation of the charter party as an entirety. Therefore it becomes necessary to determine whether the clause goes to the right or to the remedy, and whether it is a condition precedent under our law, if it goes only to the remedy.

[2] Such clauses, if regarded as conditions precedent to any action, have, I believe, nearly always been held to touch the remedy, and not the right. Meacham v. Jamestown, etc., Co., 211 N. Y. 346, 105 N. E. 653, Ann. Cas. 1915C, 851; U. S. Asphalt Co. v. Trinidad Lake Petroleum Co. (D. C.) 222 Fed. 1006. They do not affect to touch the obligations of the parties, as surely they do not; they prescribe how the parties must proceed to obtain any redress for their wrongs, which covers only remedies. In one sense everything which touches

the remedy touches the obligation, since the only sanction to performance rests in the remedy; but that is the speech of philosophers, not of lawyers, among whom the distinction has arisen and is real. I think we must therefore regard it as going only to the remedy.

I do not propose to consider the very vexed question whether an arbitration clause, which purports to cover all disputes, and not merely the quantum of the award, may be valid, if it be clearly meant as a condition precedent. In the state of New York it certainly is invalid. Meacham v. Jamestown, etc., Co., 211 N. Y. 346, 105 N. E. 653, Ann. Cas. 1915C, 851. And undoubtedly Scott v. Avery, 5 H. L. Cas. 811, has been understood very generally in this country as so fixing the law. The judgments in the Exchequer Chamber (8 Exch. 497) did proceed upon that distinction, but those in the House of Lords are, to say the least, subject to a different interpretation.

[3] An entirely different question is whether the arbitration clause is a collateral undertaking, or a condition precedent. The latter question itself depends upon two questions: First, whether the distinction between condition and collateral contract touches only the remedy; and, second, whether this is a case of condition or not. That the distinction is a question of remedy, concerning as it does what are the conditions upon which suit may be brought, hardly requires more discussion after what has been said above. The court of the forum must determine what impediments, if any, exist to the exercise of its jurisdiction. The second question is whether under the lex fori such a clause as this does impose a condition upon any suit. Expressly it does not do so, but instead of a condition imposes a penalty for refusal to abide by an award. Such a clause was held in Hamilton v. Home Ins. Co., 137 U. S. 370, 11 Sup. Ct. 133, 34 L. Ed. 708, to be collateral, and collateral only. This rule is no doubt extremely technical. U. S. Asphalt Co. v. Trinidad Lake Co., supra. But I cannot disregard the fact that it was the basis of the actual decision in the Supreme Court, nor is it true that that decision was wrong because no damages can be recovered under the penalty clause attached. Munson v. Straits of Dover, 102 Fed. 926, 43 C. C. A. 57.

[4] The next question is of damages; i. e., whether clause 24 is to be taken in limitation of liability, or as a penalty. An English case is directly in point for the libelant (Wall v. Rederiaktiebolaget, [1915] 3 K. B. 66); the theory of the court being that the evolution of the clause showed it to retain the same character of a penalty which it originally had. We meet it over 100 years ago in the form: "Penalty for nonperformance, £1,300." In this form it is regarded as a penalty pure and simple, and as such it is not enforceable. Harrison v. Wright, 13 East, 343. Later, in what was perhaps an effort to avoid that result, it appears as follows: "Penalty for nonperformance, estimated amount of freight"—which is its commonest form. As such it has twice been declared to be still a penalty. Watts v. Camors, 115 U. S. 363, 6 Sup. Ct. 91, 29 L. Ed. 406; Strōme Bruks Aktiebolaget v. Hutchinson, 10 Aspinall (N. S.) 138, affirming 41 Sc. L. R. 274. In the first case the court declined to enforce it as liquidated damages, and allowed the libelant only his proven damages, which were less than

the estimated freight; in the second, the court declined to enforce it as a limitation of liability. The penalty was enforceable at law even after 8 & 9 William III, c. 11, § 8; that statute merely provided that execution should go for only the amount of proved damages. Hence one could always recover his actual damages by suing under a penalty clause, except that he was in that event limited to the amount of the penalty.

However, along with the right to sue under the penalty ran collaterally the right to sue on the covenant to pay, and it was never held that the penalty affected the right of the covenant in any way. Each ran concurrently, though both could not be used simultaneously. Abbott on Shipping, pt. IV, c. 2, § 2. This was the state of the law while the clause existed in either of its two previous forms, whether as penalty in a stated sum, or as penalty for the estimated amount of freight. Yet during that period the penalty clause really added nothing to and subtracted nothing from the promisee's rights. He might sue under either the covenant or the penalty, and recover his actual damages in either event; the only difference being that, if he foolishly selected the penalty, he was limited by its amount. To add to the penalty clause the words "proven damages" changed nothing whatever; it merely made express what the law imposed in any event. There is, therefore, not the least reason for supposing that the addition of these words in the charter party was intended to effect a limitation of liability; there was as much ground when the penalty was in a stated sum to argue that its presence necessarily implied that the parties intended to limit any liability as after the words were added. Yet we see that the courts did not accept that conclusion when the clause was in its earlier form. It seems to follow, therefore, that Mr. Justice Bailache could not have reached a different result in Wall v. Rederiaktiebolaget, supra, from what he did, without disregarding the whole history of the clause.

It is quite true that the practical result is to reduce the penalty clause to a brutum fulmen, but that result did not arise after the words "proven damages" were inserted; it existed from the time when the penalty would not be enforced at all, except in limitation of the recovery of any one who selected the penalty clause to sue upon. Of course, while the practice in debt differed from that in assumpsit, there remained some real distinction, but that has long since disappeared and the clause has persisted as an archaism, such as is common enough in all branches of the law. That the parties should have really intended to limit their liability by any such inartificial and awkward paraphrase beginning with a penalty is unlikely. Such instruments are full of formal and time-honored phrases, and it is fair to look for some clear intent at so important an innovation. If they meant a limitation, they should have been more explicit. Lines v. Atlantic Transport Line, 223 Fed. 624, 139 C. C. A. 170.

Besides, the result is most arbitrary if the clause be thought to be in limitation. It does not limit the owner at all, because in no event can he recover more than his freight; it does limit the charterer, and by an amount which bears no relation to his loss. Of course, the par-

ties might have agreed to limit him; but there is no apparent reason for supposing that such a formal and mechanical equality was within their contemplation. That they should have intended to give the owner an option to repudiate merely because the bargain became very valuable to the charterer is extremely improbable; the owner might have wanted such a result, but the charterer would scarcely have agreed to it, especially in such times as the end of September, 1914.

[5] The last question is of the jurisdiction of this court. If the matter rests in discretion, as I am now bound to hold, I have no hesitation in exercising that jurisdiction in so obvious a case in the interests of justice.

Exceptions overruled. Decree for full damages, with costs. I assume that the amount of the damages will be settled by agreement.