## ATLANTIC FRUIT CO. v. RED CROSS LINE.

(District Court, S. D. New York. September 24, 1921.)

1. **Admiralty ⊂⟹1—Not bound by strict rules of common law.**

   Admiralty is not bound by the strict rules of the common law, and not infrequently applies principles differing from those in other courts.

2. **Shipping ⊂⟹39—Performance of arbitration agreement is not condition precedent to libel.**

   Notwithstanding the more liberal rule adopted by the common law of England, and by several of the states, relating to agreements for arbitration, courts of admiralty in the Second Circuit are committed to the rule that the performance of an agreement to arbitrate contained in the charter is not a condition precedent to the right to maintain a libel for breach of the charter.

⊂⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Admiralty ⟨key⟩1—May enforce rights created by state statutes.**

In the absence of congressional action, a state law may, within certain limitations, give a substantial right of such a character that it may be enforced in a federal court of admiralty as well as in one of equity or of common law.

**4. Admiralty ⟨key⟩26—State arbitration statute gives remedy not enforceable.**

Laws N. Y. 1920, c. 275, making arbitration agreements valid and enforceable, and authorizing the staying of legal proceedings pending arbitration, does not confer substantive right, but merely a remedy for the enforcement of the right created by the agreement of the parties, and therefore it cannot regulate the procedure and practice of the federal court of admiralty.

In Admiralty. Libel by the Atlantic Fruit Company against the Red Cross Line. On exceptions to the defense that the charter required appellant first to resort to arbitration. Defense held insufficient.

Hunt, Hill & Betts, of New York City (John W. Crandall and E. S. Rapallo, both of New York City, of counsel), for libelant.

Loomis, Barrett & Jones, of New York City (Homer L. Loomis and Reginald B. Williams, both of New York City, of counsel), for respondent.

Julius Henry Cohen, of New York City, for Chamber of Commerce of State of New York, as amicus curiæ.

MACK, Circuit Judge. The libelant, as chartered owner, seeks to recover $4,500 alleged to be due under a time charter party of the steamship Runa. The respondent alleges by way of answer that, through ignorance of the lack of dispatch in the prosecution of the voyage upon the part of the master, it has already overpaid the libelant more than $35,000 for charter hire and expenses. The respondent sets up as a further defense the refusal of the libelant to submit to arbitration. The charter party has the following provision:

"That should any dispute arise between owners and charterers, the matter in dispute shall be referred to three persons in New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of two of them shall be final and for the purpose of enforcing any award, this agreement may be made a rule of court."

Libelant files exceptions to this defense, alleging it to be irrelevant, insufficient, frivolous, and evasive.[1]

---

[1] The proctors for the libelant explain in their brief that the libelant refused to submit the controversy to arbitration in the state court not because it wanted to escape from its agreement, but because it was desirous of having the suit brought in an admiralty court where the steamer Runa and her owners could be brought in on petition if the respondent should choose to file a cross-libel. The charter party between the libelant and the owners of the Runa is the same as the one between the libelant and respondent, and if there was any failure on the part of the master in prosecuting the voyage with dispatch, and any negligence whereby the Runa was compelled to put into the Azores, the ultimate liability would be upon the owners of the Runa. The state laws, it is pointed out, do not and could not give any right of proceeding in rem against the Runa. It must not be overlooked, however, that in an action in personam in a state court, defendant's interest in a vessel is subject to attachment. Rounds v. Cloverport Foundry, 237 U. S. 303, 35 Sup. Ct. 596, 59 L. Ed. 966.

There was a tendency in the early common law to regard arbitration agreements with extreme disfavor as being contrary to public policy and as ousting the courts of their legitimate jurisdiction. But there has been a marked shift of judicial opinion in favor of arbitration, and, quite apart from statute, it is now settled, under the modern common law of England, that the parties to a contract can agree that all differences between them shall be submitted to arbitration and that arbitration of the question of liability, as well as of the amount of damage, may be made a condition precedent to the suit. Scott v. Avery, 5 H. L. Cas. 811, 8 Exch. 487; Trainor v. Fire Assurance Co., 65 L. T. R. 825; Collins v. Locke, 4 A. C. 74; Spurrier v. La Clocke, 1902 A. C. 446; Gaw v. British Law Fire Insurance Co., 1908, 1 Ir. R. 245; Woodall v. Pearl Assurance Co., 1919, 1 K. B. 593. Under the Common Law Procedure Act of 1854 and the Arbitration Act of 1889 (52 and 53 Vict. c. 49), power is given to the courts in their discretion to stay proceedings even where the agreement for arbitration does not make arbitration a condition precedent. Theretofore the courts had treated a mere agreement to arbitrate as a collateral undertaking giving rise to an action for nominal damages for breach but not barring a proceeding at law. Equity might refuse to grant relief to one who had failed to carry out his agreement to arbitrate (Waters v. Taylor, 15 Ves. Jr. 10; Harcourt v. Ramsbottom, 1 Jac. & Walk. 505), but because of inherent difficulties as to enforcement, as well as doubts as to the public policy, the Chancellor was not prepared to decree specific performance. Williston, Contracts, § 1421. After the decision in Scott v. Avery, supra, there was no need of resorting to equity to enforce the negative part of the covenant not to litigate before arbitration, because the remedy at law was adequate.

Viewing the question as one of principle rather than precedent, there is great weight in the following observation of Prof. Williston:

"Even the requirement of the form of a condition precedent as a requisite for denying relief by legal proceedings until arbitration has been had, savours of excessive technicality; for the nature of the provision necessarily indicates that the intention of the parties can be effectuated only by regarding the stipulation as a condition. A promise in a contract to give a bond for securing performance of other promises is held to create a condition precedent to liability on the other promises, because otherwise the stipulation would be ineffective. It is a condition implied in fact. Somewhat similar it may fairly be argued a provision for the arbitration of disputes under a contract can only be effective if the arbitration precedes litigation rather than follows it." Williston, Contracts, § 1724.

While there are American authorities that follow the British precedents apart from the statutes (see Williston, § 1721), there has been a tendency in some courts here, as there was even for a time in the lower courts in England, to follow the principles laid down, not by the House of Lords, but by the Exchequer Chamber in Scott v. Avery, supra, and to hold invalid and unenforceable agreements to arbitrate the question of liability itself as distinguished from the amount of the loss or damage. Meacham v. James. F. & C. R. R. Co., 211 N. Y. 346, 105 N. E. 653, Ann. Cas. 1915C, 851; Hamilton v. Home Insurance Co., 137 U. S. 370, 11 Sup. Ct. 133, 34 L. Ed. 708 (semble); Hamilton

v. Liverpool Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945, 34 L. Ed. 419 (semble) ; Asphalt Refining Co. v. Trinidad Lake Petroleum Co. (D. C.) 222 Fed. 1006; Aktieselskabet Korn-og Foderstof Kompagniet v. Rederiaktiebolaget Atlanten, 250 Fed. 935, 163 C. C. A. 185, Ann. Cas. 1918E, 491; (D. C.) 232 Fed. 403, affirmed on another point in 252 U. S. 313, 40 Sup. Ct. 332, 64 L. Ed. 586; The Eros, 251 Fed. 45, 163 C. C. A. 295; (D. C.) 241 Fed. 186. In the Atlanten Case, the Court of Appeals, while holding that agreements of this kind were unenforceable and would not be given effect as conditions precedent to legal proceedings, did not deny that an action for nominal damages might be sustained for their breach, as was done in Munson v. Straits of Dover S. S. Co., 102 Fed. 926, 43 C. C. A. 57; (D. C.) 99 Fed. 787. See, also, Matter of Berkowitz, 230 N. Y. 261, 271, 130 N. E. 288.

[1, 2] I recognize the growing sentiment in the commercial world, which is principally concerned in these matters, that the law ought not to intervene and render arbitration agreements ineffective (see Cohen, Commercial Arbitration and the Law), and the duty of courts, especially in matters essentially of procedure, to free themselves from anachronistic rules and precedents which are opposed to principles and standards of modern jurisprudence. It is true, too, that admiralty is not bound by the strict rules of the common law (Toledo S. S. Co. v. Zenith Transp. Co., 184 Fed. 391, 106 C. C. A. 501), and not infrequently applies principles differing from those in other courts (The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586; Belden v. Chase, 150 U. S. 674, 14 Sup. Ct. 264, 37 L. Ed. 1218; The China, 7 Wall, 53, 19 L. Ed. 67; The Barnstable, 181 U. S. 464, 21 Sup. Ct. 684, 45 L. Ed. 954). Arbitration clauses are found in virtually all the standard forms of charter parties and are particularly favored by shipping men as a means of avoiding litigation in distant countries before foreign tribunals. It is, moreover, important that in these matters American maritime law should accord with that of the other great maritime countries. Nor should it be overlooked that an unfortunate situation is created if arbitration agreements can be repudiated in American courts while American citizens can insist upon their enforcement in their favor as a bar to litigation abroad. While for these reasons, it would seem most desirable that, at least in admiralty, a covenant to arbitrate should operate as in the nature of an equitable defense, nevertheless, sitting in this circuit, I am constrained to follow the decisions in The Atlanten and The Eros, supra, unless, because of the New York Arbitration Act (Laws of 1920, c. 275), making arbitration agreements valid and enforceable and authorizing the staying of legal proceedings, the law to be applied in this court in admiralty has been changed.

[3] It is undoubtedly true that within certain limitations, in the absence of congressional action, "a state law may give a substantial right of such a character that * * * the right may be enforced in the proper federal tribunal whether it be a court of equity, of admiralty, or of common law." Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624. It is on this principle that state pilotage laws have been sustained. Ex

parte McNeil, supra; Cooley v. Board of Port Wardens, 12 How. 299, 13 L. Ed. 996. It is on the same principle that the states have been permitted to create a lien on a vessel for repairs made and materials furnished in her home port, and such a lien may then be enforced in admiralty. The Planter (Peyroux v. Howard) 7 Pet. 324, 341, 8 L. Ed. 700, Fed. Cas. No. 11,207; The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345. Similarly, by state statute, damages may be made recoverable for death caused by a collision upon the high seas, either in the state court (Steamboat Co. v. Chase, 16 Wall. 522, 21 L. Ed. 369; Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 644, 20 Sup. Ct. 824, 44 L. Ed. 921), or in admiralty (The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264; The Bourgogne, 210 U. S. 95, 138, 28 Sup. Ct. 664, 52 L. Ed. 973). On the other hand, state work-men's compensation statutes and statutes of fraud have been held inapplicable in admiralty (Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Union Fish Co. v. Erickson, 248 U. S. 308, 39 Sup. Ct. 112, 63 L. Ed. 261; cf. Chelentis v. Luckenbach, 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171), because these statutes were thought to impair the uniformity or to restrict the jurisdiction of the admiralty court.

[4] Arbitration statutes or judicial recognition of the enforceability of such provisions do not confer a substantive right, but a remedy for the enforcement of the right which is created by the agreement of the parties. The New York Court of Appeals has expressly so construed this statute. As Judge Cardozo states in the Berkowitz Case, 230 N. Y. 261, 270, 130 N. E. 288:

"The common-law limitation upon the enforcement of promises to arbitrate is part of the law of remedies (Meacham v. Jamestown F. & C. R. R. Co., 211 N. Y. 346, 352; Aktieselskabet K. F. K. v. Rederiaktiebolaget Atlanten, 232 Fed. Rep. 403, 405; 250 Fed. Rep. 935; U. S. Asphalt Refining Co. v. Trinidad Lake Petroleum Co., 222 Fed. Rep. 1006, 1011). The rule to be applied is the rule of the forum. Both in this court and elsewhere the law has been so declared. Arbitration is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow. This statute did not attach a new obligation to sales already made. It vindicated by a new method the obligation then existing."

It is thus evident that the New York Legislature sought to create no new substantive right, but only to provide in its own courts a new method of procedure for enforcing existing obligations. While it is true that, if substantive rights are created by a state statute, a federal court may enforce these even if it must depart in minor particulars from some of the rules of procedure outlined in the statute (Brine v. Ins. Co., 96 U. S. 627, 24 L. Ed. 858; Allis v. Ins. Co., 97 U. S. 144, 24 L. Ed. 1008; Conn. Mut. Life Ins. Co. v. Cushman, 108 U. S. 51, 2 Sup. Ct. 236, 27 L. Ed. 648), it is not within the power of the state to regulate the procedure and practice of a federal court of admiralty (The Lottawanna, 21 Wall. 558, 22 L. Ed. 654).

Moreover, the enforceability of the arbitration provision has not been made dependent upon its validity or its enforceability under the

laws of the state or country where the contract was made or where the arbitration was to be had; though valid and enforceable there, the federal courts in the Atlanten, Eros, and Trinidad, supra, have declined to effectuate it either by stay or dismissal of the libel. And this result was reached, not because it accorded with the public policy at that time prevailing in the state in which the admiralty court, a federal tribunal, sat, but because of what was assumed to be the public policy of the admiralty courts of the United States, the lex fori.

If now the admiralty courts sitting in the state of New York were for that reason to regard the New York Arbitration Statute as binding upon them, the result would be that a libel for breach of a maritime contract would be barred in those admiralty courts and not barred in the admiralty courts sitting in other states, a clear impairment of uniformity.

Whether it would be within the discretion of the federal court, sitting in New York or elsewhere, to stay its own proceedings, when, before the filing of the libel in admiralty, a proceeding is instituted under the New York statute to secure what is tantamount to specific performance of an agreement to arbitrate (see McClellan v. Carland, 217 U. S. 268, 281, 30 Sup. Ct. 501, 54 L. Ed. 762; In re Lasserot, 240 Fed. 325, 153 C. C. A. 251; Woren v. Witherbee Sherman & Co. [D. C.] 240 Fed. 1013), it is not necessary to decide on the present motion, which does not refer to any proceeding in the state court. Counsel, however, has handed me a copy of Judge Augustus N. Hand's opinion, remanding to the state court, whence it had been removed to this court, the matter of the petition of Red Cross Line for an order directing Atlantic Fruit Company to proceed to arbitration, decided June 20, 1921, and a copy of Judge Burr's opinion in the same case, after it had been remanded, directing the parties to proceed to arbitration (N. Y. Law Journal, August 2, 1921). Whether this petition in the state court was filed prior or subsequent to the filing of the libel in admiralty does not appear from the opinions.

It would not be proper for me on this motion to express any opinion on the validity of the proceedings in the state court or on the effect of an award by the arbitrators or a judgment thereon in the state court, if such award or judgment should antedate the decree in this court.

It suffices now that in my judgment, for the reasons heretofore stated, the state statute neither bars the libel nor justifies a stay of the proceedings thereunder.