**SVERDRUP CORPORATION,**
**Plaintiff–Appellant,**

v.

**WHC CONSTRUCTORS,**
**INCORPORATED, Defendant–Appellee,**

and

**Century III, Incorporated, Defendant.**

**No. 92–1597.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1992.

Decided March 19, 1993.

---

Mark Geoffrey Arnold, Husch & Eppenberger, St. Louis, MO, argued (Matthew D. Menghini, Husch & Eppenberger, St. Louis, MO, David W. Robinson, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, VA, on the brief), for plaintiff-appellant.

Ira J. Smotherman, Jr., Shapiro, Fussell, Wedge & Smotherman, Atlanta, GA, argued (Herman L. Fussell, Shapiro, Fussell, Wedge & Smotherman, on the brief) for defendant-appellee.

Before RUSSELL and HALL, Circuit Judges, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

DONALD RUSSELL, Circuit Judge:

The Appellant, Sverdrup Corporation (Sverdrup), and Appellee, WHC Constructors, Inc. (WHC), agreed, pursuant to an arbitration provision contained in a construction subcontract between the two parties, to submit a dispute regarding liability for faulty construction to arbitration. Arbitration resulted in an award for Sverdrup on August 31, 1990. On October 8, 1991, Sverdrup attempted to enforce the award. The district court ruled that Sverdrup was barred from confirmation and enforcement of an award because it had delayed in seeking confirmation beyond the one-year period in § 9 of the Federal Arbitration Act (FAA), 9 U.S.C. § 9. The trial court accordingly dismissed Sverdrup's arbitrated claims with prejudice, and Sverdrup appealed. We reverse the district court's dismissal and remand with instructions to confirm Sverdrup's arbitration award.

## I.

Sverdrup is a Missouri corporation, WHC is a Georgia corporation, and Century III, Inc. (Century) is a South Carolina Corporation. All three companies are in the construction business.

During the construction of a package development center in South Carolina for Sonoco Products, Inc., the present dispute arose. Sverdrup was the general contractor, and Century and WHC were subcontractors. WHC was responsible for various mechanical systems for the project, including the water tower and chilled water systems. Century tested and repaired the cooling system. When the plant's cooling system failed in July 1988, Sverdrup blamed the two subcontractors. Century and WHC accused each other and Sverdrup of causing the cooling system's breakdown. Sverdrup filed this suit in December 1988 against Century and WHC.

The subcontract between Sverdrup and WHC contained an arbitration provision which read:

> All claims that cannot be resolved between the parties shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. *The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.*

(Emphasis added).

In May 1989, WHC moved to compel arbitration and a stay of the proceedings in

district court. Following this request, the parties formally agreed to submit their disputes to arbitration. That Agreement mandated that the parties:

A. Submit their disputes to "arbitration under the Construction Industry Arbitration Rules of the American Arbitration Association (the Arbitration Rules),

B. [F]aithfully observe this Agreement and the Rules, and

C. [A]bide by and perform any award rendered by the arbitrators . . ."

The Agreement also provided:

[T]he award rendered by the arbitrators will be final and judgment may be entered upon it in any court having jurisdiction thereof and will not be made subject to modification or appeal except to the extent permitted by Sections 10 and 11 of the Federal Arbitration Act. (9 U.S.C. §§ 10, 11).

In response to this agreement, the district court issued a consent order staying the action pending arbitration.

The parties submitted all of their disputes, with the exception of one of Sverdrup's claims against WHC, to arbitration. Two awards were rendered, one in favor of Century against Sverdrup for $99,522.16 and another favoring Sverdrup against WHC totaling $419,456.07. WHC did not make a motion to vacate or modify the award against it within 90 days as required in § 12 of the FAA. 9 U.S.C. § 12.

On October 8, 1991, 38 days beyond the one-year period allowed in § 9 of the FAA for confirmation of awards, Sverdrup filed a motion to enter the arbitration award as a judgment against WHC and to certify that judgment. This motion was based on Rule 54(b) Fed.R.Civ.P. and the Arbitration Rules. The district court denied the motion and dismissed the arbitrated claims with prejudice. 787 F.Supp. 542. Sverdrup's motion was considered a motion to confirm under the FAA rather than an enforcement of the award at law. In reaching its decision, the district court found that § 9 imposed a one-year limitation period which acted as a bar to confirmation of arbitration awards under the FAA. The court indicated that an arbitration award, which

was not confirmed within a one-year period, was unenforceable as a judgment. The stay covering the remaining unarbitrated claim before the district court was lifted, and a date for trial was set. This claim was then dismissed by stipulation. Sverdrup made a timely appeal to this Court.

## II.

In accord with the district court, we treat Sverdrup's motion as a request to confirm the arbitration award. Section 9 of the FAA provides a mechanism for summary confirmation of arbitration awards. 9 U.S.C. § 9. It reads in pertinent part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made, any party to the arbitration *may* apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

*Id.* (emphasis added). Contradictory interpretations of this language give rise to the primary issue on appeal, i.e., whether a party to an arbitration agreement, which is subject to the FAA's provisions, may confirm an arbitration award beyond the one-year period allowed in § 9.

Before the district court and on appeal, Sverdrup relied heavily on cases from other jurisdictions which have addressed § 9 and have held that the one-year time period for application to a district court is permissive rather than mandatory.

The language of the foregoing section [§ 9 of the FAA] as to application to the court for an order is not mandatory, but permissive. . . . Enforcement of the award in this case is not barred by the one-year limitation contained in Section 9 of the Act, which provides for the sum-

mary remedy of confirmation of the award by the court.

*Kentucky River Mills v. Jackson,* 206 F.2d 111, 120 (6th Cir.), *cert. denied,* 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.,* 452 F.Supp. 573, 575 (D.Neb.1978); *Brown v. Bridgeport Rolling Mills Co.,* 245 F.Supp. 41, 45 n. 7 (D.Conn.1965). *See also Derwin v. General Dynamics Corp.,* 719 F.2d 484, 490 n. 5 (1st Cir.1983) (state arbitration statute construed); *Heffner v. Jacobson,* 100 N.J. 550, 498 A.2d 766, 768–69 (1985) (state arbitration statute stating party "may" commence action to confirm within three months was permissive).

■ A persuasive textual argument bolsters this interpretation. The use of the word "may," as opposed to mandatory language, has been deemed to have been of critical importance in determining the permissive nature of § 9. The word "[m]ay in a statute ... normally confers a discretionary power, not a mandatory power, unless the legislative intent, as evidenced by the legislative history, evidences a contrary purpose." *Dalton v. United States,* 816 F.2d 971, 973 (4th Cir.1987) (*citing United Hospital Center, Inc. v. Richardson,* 757 F.2d 1445, 1453 (4th Cir.1985)); *see also Koch Refining Co. v. United States Dep't of Energy,* 497 F.Supp. 879, 891 (D.Minn. 1980) ("[W]here the words 'shall' and 'may' are used in the same statute or regulation, 'shall' is usually interpreted to impose a mandatory obligation and 'may' is usually interpreted to grant discretion.") (*citing Farmers Bank v. Federal Reserve Bank,* 262 U.S. 649, 662–63, 43 S.Ct. 651, 656–57, 67 L.Ed. 1157 (1923)). However, this rule is not inflexible, and there are situations where legislative intent indicates that the term "may" should be interpreted as mandatory. *Dalton,* 816 F.2d at 973.

An examination of the FAA's language gives rise to the inference that Congress understood the plain meaning of "may" to be permissive. Section 9 of the FAA states that any party "may apply" for a confirmation order but the court "must grant" the order absent a modification or vacation under §§ 10 or 11. 9 U.S.C. § 9. Further-

more, under § 12 of the FAA, a motion to modify "must be served" within three months of the award. 9 U.S.C. § 12. This Court has previously concluded that this language in § 12 is mandatory, and thus, modification motions made beyond three months after the award are time barred. *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir.1986). In this instance, the use of alternating permissive and mandatory language throughout the FAA indicates that Congress was cognizant of the difference in meaning between "may" and "must" and intended that the term "may" be construed as permissive.

The district court rejected case law from other jurisdictions, and instead, followed a canon of statutory interpretation which requires reading a statute in such a manner as to give effect to all its provisions. It recognized that, contrary to this principle of statutory construction, Sverdrup's suggested interpretation would render the one-year period for confirmation superfluous. The court held the plain language of the statute, as evidence of Congressional intent, was dispositive. The one-year time period was given full effect as a statute of limitations. Because Sverdrup's motion to confirm and enforce the arbitration award was made beyond the one-year period, the district court held that the suit was barred. The court noted that other remedies might have been available to Sverdrup, but concluded they were irrelevant to its interpretation of § 9.

Sverdrup concedes its interpretation of § 9 leaves the one-year period for summary confirmation without any real meaning. However, it claims the district court's analysis of the case merely favored one canon of interpretation over another instead of coming to terms with the fact that the statute is facially ambiguous. Under the circumstances, it is necessary to inquire into the legislative intent of the FAA to determine which proposed construction is most compatible with the purposes of the Act. *See Blackfeet Tribe of Indians v. State of Mont.,* 729 F.2d 1192, 1194 (9th Cir.1984) (rules of interpretation yielded inconsistent results and led court to pursue a thorough analysis of the language, pur-

pose, and historical context of statute), *aff'd*, 471 U.S. 759, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985).

### III.

Arbitration is presently a highly favored mechanism for dispute resolution. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 101 (4th Cir.1991); *Sharon Steel Corp. v. Jewell Coal and Coke Co.*, 735 F.2d 775, 777 (3d Cir.1984). Its chief benefits lie in providing "speedy and inexpensive trial[s] before specialists" and in "eas[ing] the workload of the courts." *Conticommodity Services, Inc. v. Philipp and Lion*, 613 F.2d 1222, 1224 (2nd Cir.1980); *Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1179 (11th Cir.1981); *Seaboard C.L.R. Co. v. National Rail Passenger Corp.*, 554 F.2d 657, 660 (5th Cir.1977) ("relieves congestion in the courts"); *United Fuel Gas Co. v. Columbian Fuel Corp.*, 165 F.2d 746, 751 (4th Cir.1948) ("speedy and inexpensive" disposition of disputes). The FAA facilitates one method by which parties, who have consented to avail themselves to the Arbitration Act's provisions, may arbitrate their differences and avoid the attendant "delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).

Contrary to the current judicial inclination to encourage arbitration, both in the United States and in England, arbitration was for long discouraged. *See Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 120–21, 44 S.Ct. 274, 275–76, 68 L.Ed. 582 (1924). In early England, "[t]here was a tendency ... to regard arbitration agreements with extreme disfavor as being contrary to public policy and as ousting the courts of their legitimate jurisdiction." *Atlantic Fruit Co. v. Red Cross Line*, 276 F. 319, 321 (S.D.N.Y.1921), *aff'd*, 5 F.2d 218 (2nd Cir.1924). This judicial trend probably arose out of "contests of the courts of

ancient times for extension of jurisdiction— all of them being opposed to anything that would altogether deprive every one of them of jurisdiction." *United States Asphalt Refining Company v. Trinidad Lake Petroleum Co.*, 222 F. 1006, 1007 (S.D.N.Y. 1915) (*quoting Scott v. Avery*, 10 Eng.Rep. 1121, 1138 (H.L. 1856)).[1]

Consistent with this view of arbitration, executory arbitration agreements came to be considered freely revocable by either party to the agreement. *Kulukundis Shipping Co., S/A v. Amtorg Trading Corp.*, 126 F.2d 978, 982 (2nd Cir.1942); *Memphis Trust Company v. Brown–Ketchum Iron Works*, 166 F. 398, 402 (6th Cir.1909); *Tobey v. County of Bristol*, 23 F.Cas. 1313, 1321 (C.C.D.Mass.1845) (14,-065). The seeds of this judicial trend can be traced back to 1609 where, in *Vynior's Case*, 77 Eng.Rep. 595, 599–600 (K.B.1609), Lord Coke "in a dictum, citing precedents, dilated on the inherent revocability of the authority given to an arbitrator...." *Kulukundis*, 126 F.2d at 982. At the time these statements were made, the revocability of arbitration agreements was not significant as a penal bond was generally required to be posted to assure parties would abide by the arbitration's result. *Id.* This bond was converted into a judgment if a breach of the agreement occurred. *Id.* (*citing Vynior's Case*, 77 Eng.Rep. at 598). In 1867, the Statute of Fines and Penalties, 8 & 9 Wm. III c. 11, s. 8 (1867), was enacted. *Id.* It required that judgments obtained by actions on bonds posted for the performance of agreements could only be executed for the actual damages sustained, rather than for the entire bond. *Id.* This statute significantly affected the importance of Lord Coke's dicta. Because courts, following Lord Coke's lead, determined arbitration agreements were revocable at will and the Statute of Fines and Penalties reduced the remedy for a breach of an arbitration agreement to actual dam-

---

1. It has been insinuated that this position stemmed from "the desire of [English] judges, at a time when their salaries came largely from

fees, to avoid loss of income." *Kulukundis Shipping Co., S/A v. Amtorg Trading Corp.*, 126

ages,[2] executory arbitration agreements lost their effectiveness. *Id.* at 982–83.

In response to this situation, Parliament enacted 9 Wm. III c. 15 (1698), which allowed executory arbitration agreements that provided for such measures to "be made a 'rule of court,' (i.e., a court order), in which event [they] became irrevocable, and one who revoked [such an agreement] would be subject to punishment for contempt of court...." *Id.* at 982. This statute was subsequently interpreted narrowly by the courts of England and did little to further the enforcement of executory arbitration agreements. *Id.* The end result was that executory agreements were not specifically enforceable and could not be used as a plea at bar or to stay a suit on the original action. *Red Cross Line,* 264 U.S. at 121, 44 S.Ct. at 276; *Kulukundis,* 126 F.2d at 983; *Tobey,* 23 F.Cas. at 1319.

The historic hostility to executory agreements to arbitrate in the United States is attributed to the adoption in the 19th century of the English rule disfavoring arbitration. *Kulukundis,* 126 F.2d at 984; *e.g., Home Ins. Co. v. Morse,* 87 U.S. 445, 451,

22 L.Ed. 365 (1874). Parties were considered incapable of ousting the courts of their jurisdiction by contract. *See Tatsuuma Kisen Kabushiki Kaisha v. Prescott,* 4 F.2d 670, 671 (9th Cir.1925); *Atlantic Fruit Co.,* 276 F. at 321. As criticism of this rule of law increased, American courts developed numerous rationales for following what had become deeply entrenched but antiquated and disliked precedent.[3] Until the FAA was passed in 1925, courts continued to refuse to specifically enforce executory arbitration agreements. The purpose of enacting the Arbitration Act was to alter this judicial attitude and to make arbitration agreements specifically enforceable. *Kulukundis,* 126 F.2d at 985.[4] Its passage allowed courts "to shake off the old judicial hostility to arbitration" and led to the present day presumption favoring such agreements. *Id.*

Although purely executory arbitration agreements were not specifically enforced in the United States, i.e., a party could not be forced to enter into arbitration against his will, limited exceptions to this general principle developed. Executory arbitration

---

F.2d 978, 983 & n. 14 (2nd Cir.1942) (*citing Scott v. Avery,* 25 L.J.K.B. 308, 313 (1856)).

2. In most cases actual damages were the equivalent of nominal damages. *See Munson v. Straits of Dover S.S. Co.,* 102 F. 926, 928 (2nd Cir.1900), and *Munson v. Straits of Dover S.S. Co.,* 99 F. 787, 790 (S.D.N.Y.1900), for a discussion of the difficulties associated with ascertaining actual damages for a breach of an executory arbitration agreement.

3. The most often enunciated reasons supporting the denial of specific performance of an arbitration agreement were:
   (a) The contract is in its nature revocable.
   (b) Such contracts are against public policy.
   (c) The covenant to refer is but collateral to the main contract, and may be disregarded, leaving the contract keeper to his action for damages for breach of such collateral covenant.
   (d) Any contract tending to wholly oust the courts of jurisdiction violates the spirit of the laws creating the courts, in that it is not competent for private persons either to increase or diminish the statutory juridical power.
   (e) Arbitration may be a condition precedent to suit, and as such valid, if it does not prevent legal action, or seek to determine out of court the general question of liability.

*United States Asphalt Refining Company v. Trinidad Lake Petroleum Co.,* 222 F. 1006, 1008 (S.D.N.Y.1915).

4. The House Committee report regarding the FAA stated:
   "[a]rbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it becomes disadvantageous to him. An arbitration agreement is placed on the same footing as other contracts, where it belongs.... The need for the law arises from an anachronism of our American law. Some centuries ago, because of the jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction. This jealousy survived so long a period that the principle became firmly embedded in the English common law and was adopted with it by the American courts. The courts have felt that the precedent was too strongly fixed to be overturned without legislative enactment, although they have frequently criticized the rule and recognized its illogical nature and the injustice which results from it." *Kulukundis,* 126 F.2d at 985 (*quoting* H.R.Rep. No. 96, 68th Cong., 1st Sess. 1–2 (1924)).

agreements pursuant to a "rule of court" were always enforceable in United States courts. *Red Cross Line*, 264 U.S. at 121–22, 44 S.Ct. at 276–77; *Heckers v. Fowler*, 69 U.S. 123, 131, 17 L.Ed. 759 (1865); *Alexandria Canal Company v. Swann*, 16 U.S. (5 How.) 315, 316, 12 L.Ed. 60 (1846); *Thorton v. Carson*, 2 U.S. 681, 683 (1813); *Kulukundis*, 126 F.2d at 983. Also, limited executory arbitration agreements concerning only the amount of damage or loss, while leaving the determination of liability to the courts, became accepted as enforceable condition precedents to bringing suit. *Red Cross Line*, 264 U.S. at 121, 44 S.Ct. at 276; *Hamilton v. Liverpool, London & Globe Insurance Co.*, 136 U.S. 242, 255, 10 S.Ct. 945, 950, 34 L.Ed. 419 (1890); *Martinsburg & P.R. Co. v. March*, 114 U.S. 549, 552–53, 5 S.Ct. 1035, 1036–37, 29 L.Ed. 255 (1885); *Atlantic Fruit Co.*, 276 F. at 321; *Scott v. Avery*, 155 Eng.Rep. 1447, 1449 (Exch.1853).[5]

Even arbitration agreements providing for a determination of liability were considered to be valid. *Red Cross Line*, 264 U.S. at 121, 44 S.Ct. at 276; *Kulukundis*, 126 F.2d at 983. Executory agreements supported a collateral action for breach of the arbitration agreement which usually resulted in the recovery of nominal damages. *Red Cross*, 264 U.S. at 121, 44 S.Ct. at 276 (*citing Hamilton v. Home Insurance Co.*, 137 U.S. 370, 385–86, 11 S.Ct. 133, 138, 34 L.Ed. 708 (1890)); *Kulukundis*, 126 F.2d at 983; *Munson v. Straits of Dover S. S. Co.*, 102 F. 926, 928 (2nd Cir.1900). Only nominal damages were recoverable because where "nothing ha[d] been done in partial execution of the covenant, and the covenant d[id] not fix anything by way of a penalty or liquidated damages, the loss arising from a refusal to fulfill [was] usually wholly conjectural ... [and] it [was] impossible to prove that the party would have profited by the arbitration." *Mun-*

son, 102 F. at 928 (2nd Cir.1900). If a party sustained damages as a result of another party's revocation of an arbitration agreement after a dispute had been submitted, it was possible to recover actual damages. *Id.* In such cases, "there may [have been] very appreciable and definite expenses, damages, or losses caused by the revocation, which [were] the direct and proximate result of the defendant's breach of the submission, in reliance on which the plaintiff has acted; and for such damages ... a recovery [could] be had." *Munson v. Straits of Dover S. S. Co.*, 99 F. 787, 790 (S.D.N.Y.1900).

■ Where an award was rendered pursuant to an executed arbitration agreement, as happened here, that award was enforceable at law or equity. *Red Cross*, 264 U.S. at 121, 44 S.Ct. at 276 (*citing Karthaus v. Ferrer*, 7 U.S. (1 Pet) 540, 546, 7 L.Ed. 121 (1828); *Burchell v. Marsh*, 58 U.S. (17 How) 362, 367, 369, 15 L.Ed. 96 (1854); and *Bayne v. Morris*, 68 U.S. 97, 98–99, 17 L.Ed. 495 (1863)); *United Electrical, etc., Workers v. General Electric Co.*, 233 F.2d 85, 96 (1st Cir.1956), *aff'd*, *General Co. v. United Electrical, Radio & Machine Workers*, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957); *N.P. Sloan Co. v. Standard Chemical & Oil Co.*, 256 F. 451, 454–55 (5th Cir.1918) (After award has been rendered following an unrevoked submission of the parties, the award is final and binding on parties, "unless the arbitrators are guilty of fraud, partiality, or other improper conduct in making it."); *Memphis Trust Company*, 166 F. at 403–04; *Tobey*, 23 F.Cas. at 1320; *Jacob v. Pacific Export Lumber Co.*, 136 Or. 622, 297 P. 848, 856 (1931); *Scott v. Avery*, 10 Eng.Rep. 1121, 1129 (H.L.1856) (absent fraud, after award is made, courts must treat awards "as 'rem judicatam.'"). *Restatement of Contracts*, § 550 cmt a, (1932) ("If, however, the bar-

---

5. United States courts tended "to follow the principles laid down, not by the House of Lords, but by the Exchequer Chamber in *Scott v. Avery*, [CLV Eng.Rep. 1447, 1449 (Exch.1853) ], and to hold invalid and unenforceable agreements to arbitrate the question of liability itself as distinguished from the amount of the loss or damage." *Atlantic Fruit Co. v. Red Cross Line*, 276 F.

319, 321 (S.D.N.Y.1921) *aff'd*, 5 F.2d 218 (2nd Cir.1924). In *Scott v. Avery*, X Eng.Rep. 1121, 1137–39 (H.L.1856), the House of Lords indicated that the question of liability as well as damages could be made a condition precedent to litigation by contract. *Atlantic Fruit Co.*, 276 F. at 321; *Kulukundis*, 126 F.2d at 984.

gain to arbitrate is carried out and an award is made, the award is binding."); 6 Williston, *Contracts* § 1927, at 5387 (rev. ed. 1938). Prevailing parties who had been confronted with a refusal to pay arbitration proceeds were entitled to bring an "action at law on the award" to enforce it. *Kentucky River Mills*, 206 F.2d at 120; *United Fuel Gas Co.*, 165 F.2d at 749 (plaintiffs were entitled to have award granted in arbitration declared valid and enforced in federal court); *Rueda v. Union P. R. Co.*, 180 Or. 133, 175 P.2d 778, 788 (1946) ("A common-law award is, of course, not self-enforcing. An action at law must be brought upon the award."); *Hughes v. National Fuel Co.*, 121 W.Va. 392, 3 S.E.2d 621, 624 (1939), *partially overruled on other grounds in Board of Education v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439, 448 n. 7 (1977). United States courts have always been willing to "promptly interfere to enforce [arbitration] awards when fairly and lawfully made, without hesitation or question." *Tobey*, 23 F.Cas. at 1320; *Red Cross*, 264 U.S. at 122, 44 S.Ct. at 276; *Rueda*, 175 P.2d at 788 ("The court will enter judgment upon [an award], but not if the award was fraudulent or arbitrary or the result of gross mistake of fact, or if it appears that the arbitrators intended to follow the law and then based the award on a clear misapprehension concerning the law."). The FAA supplemented rather than extinguished any previously existing remedies. Thus, an action at law remains a viable alternative to confirmation proceedings under § 9. *See Kentucky River*, 206 F.2d at 120; *Paul Allison*, 452 F.Supp. at 575; *Bridgeport Rolling Mills*, 245 F.Supp. at 45 n. 7.[6]

## IV.

Sverdrup's attempt to collect the award it gained in arbitration and which WHC

agreed to treat as binding should not be thwarted by WHC's post-award technical objection. *See generally West Rock Lodge, etc. v. Geometric Tool Co., etc.*, 406 F.2d 284, 286 (2nd Cir.1968). Because remedies do exist outside the FAA's framework to enforce Sverdrup's award, reading § 9 as a strict statute of limitations would be an exercise in futility. Instead of cutting off the rights of parties to receive the proceeds of arbitration, it would merely encourage, at the expense of judicial economy, the use of another analogous method of enforcing awards. To obtain their awards, individuals who prevailed in arbitration and failed to confirm within the one-year time limit would simply resort to filing actions at law. Contrary to the purposes of the FAA, this would inevitably lead to inefficiency, delay and court congestion. *See Prima Paint*, 388 U.S. at 404, 87 S.Ct. at 1806; *Conticommodity*, 613 F.2d at 1224.

The resultant proliferation of confirmation motions provides an equally compelling reason to refrain from interpreting § 9 as containing a strict statute of limitations. In *Derwin*, an action involving § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, a dispute led to arbitration pursuant to the Massachusetts Arbitration Act (MAA), Mass.Gen.Laws ch. 150C, §§ 1–16 (1992), and an award was rendered. *Derwin*, 719 F.2d at 486. The party who had lost the arbitration failed to make a motion to vacate or modify the award within the 30 day time limits contained in the MAA. *Id.* at 489 (*citing* Mass.Gen.Laws ch. 150C, §§ 11(b), 12(b) (1992)). Three years after the award was issued, the prevailing party sought a state court's confirmation under § 10 of the MAA. *Id.* at 486.[7] Since no specific limitation existed in

---

**6.** In *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir.1986), and *Chauffeurs, Teamsters, etc. v. Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981), it was indicated that there was no common law remedy analogous to an enforcement of an arbitration award under § 9. These comments are incorrect. An action at law on the award provided a remedy similar to § 9's enforcement provision at common law.

**7.** Section 10 of the Massachusetts Arbitration Act provides:

Upon application of a party, the superior court shall confirm an award, unless within the time limits, hereinafter imposed grounds are urged for vacating, modifying or correcting the award, in which case the court shall proceed as provided in sections eleven and twelve.

§ 10 and there was no analogous Massachusetts limitation period, the district court adopted the one-year time limit found in § 9 of the FAA and held that it barred confirmation. *Id.* at 487.

The First Circuit reversed the district court's holding concerning the applicable statute of limitations. *Id.* at 490. In so doing, the appellate court expressed a rationale that may be applied by analogy to an interpretation of § 9 of the FAA. The court stated that the language of § 10 clarified that the lapse of the 30 day time limits in §§ 11 and 12:

> eliminates any prospect of a successful challenge to an award ... and ... encourages the parties voluntarily to treat the award as final and binding, foregoing judicial proceedings altogether. *This tendency of Section 10 to encourage private settlement would, if anything, be undermined if it contained a strict limitations period for actions to confirm.* If the prevailing party failed to obtain a confirmatory decree within the period, the award would become unenforceable. *This prospect would force the prevailing party to undergo the expense and delay of suing to confirm the award, even where the other party had agreed in good faith that the award was final and binding.*

*Id.* at 489–90 (emphasis added).[8]

In a like manner, § 12 of the FAA makes a challenge to confirmation after 90 days virtually impossible and encourages parties to treat an award as binding. 9 U.S.C. § 12. If § 9 was given the effect of a statute of limitations, individuals would be forced to protect their awards gained through arbitration by filing motions to confirm in every case. Such consequences are repugnant to the intent of the FAA. For the foregoing reasons, § 9 must be interpreted as its plain language indicates, as a permissive provision which does not bar the confirmation of an award beyond a one-year period.

We reverse the district court's order denying Sverdrup's motion for confirmation and dismissing the arbitrated claims. This action is remanded with instructions to confirm Sverdrup's award against WHC.

REVERSED AND REMANDED.

---

*Derwin v. General Dynamics Corp.,* 719 F.2d 484, 489 (1st Cir.1983) (*citing* Mass.Gen. Laws ch 150C, § 10 (1982)).

**8.** The court went further to acknowledge that the language of § 9 of the Act has been interpreted as permissive. *Derwin,* 719 F.2d at 490 n. 5.